[No. 2919. Decided August 30, 1898.]

## J. M. GRIFFITH, *Respondent*, v. H. B. STRAND et ux., *Appellants*.

FRAUD — SALES — FALSE REPRESENTATIONS — REMEDY OF BUYER — PAROL PROOF.

Parol proof of fraudulent representations is admissible for the purpose of avoiding a written contract induced by them, and it is immaterial whether the fraud relates to the consideration or to the execution of the contract.

The failure to rescind a fraudulent sale does not operate as a waiver of the right to treat the sale as fraudulent, but the defrauded buyer may affirm the contract and recoup in damages if sued by the vendor.

The purchaser of a stock of goods cannot avoid the sale on the ground of fraud, in that false representations were made to him as to the quantity, quality and value of the goods, when there was no fiduciary relation between the parties, and when it was in the purchaser's power to readily determine the truth or falsity of such representations by an inspection of the goods.

One who stands by while fraudulent representations concerning certain goods are made is not bound thereby, though he subsequently by assignment acquires the interest of the one making the false representations, in the price of the goods, when such person at the time of the misrepresentations was not interested in the goods nor a party to the negotiations then pending, nor acting in collusion with his assignor, nor aiding in any attempt to defraud the purchaser of the goods, nor bound to take note of the misrepresentations by reason of his relation to the parties or interest in the subject matter of the sale.

Appeal from Superior Court, Whatcom County.—Hon. H. E. HADLEY, Judge. Affirmed.

*Newman & Howard*, for appellants.

*Dorr & Hadley*, for respondent.

The opinion of the court was delivered by

GORDON, J.—This action was commenced for the foreclosure of two mortgages, one a chattel, the other a real

estate, mortgage, both of which were made to secure the payment of a note for $4,800, and interest, which was given by the defendants in part payment of the purchase price of a stock of dry goods and clothing. The defendants in their answer alleged fraud by reason of which they were induced to purchase the stock. To this plea and counterclaim the court sustained a demurrer, and, the defendants electing to stand thereon and refusing to amend, judgment was given for the plaintiff, and defendants have appealed.

It appears from the answer that the defendants are husband and wife, residing at New Whatcom, in this state; that in October, 1896, in the city of Minneapolis, Minnesota, they entered into a contract for the purchase of said stock with G. W. Skinner, who was at that time the owner thereof; that, in the negotiation leading up to the contract, Skinner was also represented and assisted by the firm of Buck & Campbell, his agents at Minneapolis, for the purpose of effecting the sale. These negotiations terminated in the following written agreement:

"This agreement, made and entered into this 6th day of November, A. D. 1896, by and between H. B. Strand of New Whatcom, Washington, party of the first part, and G. W. Skinner of Kussuth county, Ia., party of the second part,

Witnesseth, that for and in consideration of the sum of one ($1.00) dollar, in hand paid by the said party of the first part, to the said party of the second part, the receipt whereof is hereby acknowledged, and the further consideration of the covenants and agreements on the part of the said party of the first part, hereinafter contained, the said party of the second part hereby agrees to deliver to the said party of the first part, his heirs or assigns, after full payment of the notes herein described, and he has otherwise fully performed his part of this contract, all that certain stock of goods, wares and merchandise as has this day been fully inspected by the said first party, an inventory of which is hereto attached and made a part hereof, free, clear and dis-

charged of all liens, charges, costs or incumbrances of every kind and nature; stocks Nos. 157-161-162 and 163, amounting to eleven-thousand ($11,000) dollars, according to the invoices thereof.

In consideration, therefore, the said party of the first part hereby agrees to pay to the said party of the second part, or order, the further sum of one thousand ($1,000) dollars, on or before the 1st day of December, 1896; and the further sum of two thousand seven hundred ($2,700) dollars on or before the 15th day of December, 1896, according to the conditions of two certain promissory notes, bearing even date herewith; one for the sum of one thousand ($1,000) dollars, due on or before December 1st, 1896, and one for the sum of two thousand seven hundred ($2,700) dollars, due on or before December 15th, 1896, executed by the said party of the first part hereto, and to deliver to the said party of the second part, a good and sufficient deed of warranty conveying all the certain real property situate in the county of Whatcom, state of Washington, and more particularly described as follows, to-wit:

The E. ½ of the E. ½ of Sec. 17, Town. 40, Range 1, E. and that part of Section 20, Town. 40, Range 1, East, lying north of California creek.

Also W. ½ of S. ½ of S. E. ¼ of Section 10, Town. 40, Range 1, East, state and county aforesaid, free and clear of all incumbrances of whatsoever nature, accompanied by an abstract of title of said real property, extended down to date of delivery, showing the title to be as above stated.

And the said party of the first part agrees to buy the said stock of merchandise and pay for the same at the time and in the manner herein set forth, and does by these presents accept the same in the condition it now is, and at the prices set forth in the said inventories, waiving all claim for damaged goods, shortage and prices, etc.

Time is the essence of this agreement.

Witness our hands and seals this day and year first above written.

Witnesses:  M. C. Black,      H. B. Strand,    [Seal.]
            C. A. Campbell. G. W. Skinner.   [Seal.]"

It is alleged in the answer that the appellant Strand was

induced to enter into this agreement by reason of certain representations and statements made to him by Skinner and his agents, concerning the character and value of said stock of goods. The representations referred to are alleged to have been as follows:

" Said Skinner then and there further stated that said stock of goods consisted of dry goods, notions and clothing of the value of $11,000, as shown by a complete and full invoice thereof then in the possession of his said agents, Buck and Campbell; that said invoice was correct in every particular and said stock was reasonably worth the invoiced value thereof; that said stock was practically new, was A. No. 1, first class in every respect and readily salable and merchantable in such retail business as said defendant desired to engage in."

It is also alleged that all of said statements and representations

" touching the amount, quality, value, character and condition of said stock of goods . . . were knowingly, falsely and wilfully made by said Skinner, with the unlawful and fraudulent intent and purpose of persuading and inducing the purchase of said stock of goods, . . . and for the purpose of deceiving, cheating and defrauding said defendant, . . . and that said stock, instead of being practically new, A No. 1, first class in every respect, readily salable and merchantable and worth the invoiced value thereof, was at said time very old, much shelf worn, badly faded, moth-eaten, unsalable and unmerchantable, and not worth over twenty per cent. of its invoiced value, all of which the said Skinner at the time well knew."

In accordance with the written agreement above set out, the defendants executed and delivered to Skinner their promissory notes for $1,000 and $2,700, respectively, due on December 1st and 15th, respectively, 1896, and also executed and delivered to Skinner their deed of conveyance of real estate described in said agreement. It also appears

44—19 WASH.

in the answer that the defendants were unable to pay said notes as they matured, and the stock continued in possession of Skinner at Minneapolis. It also appears that plaintiff was the owner of the warehouse in which the goods were stored at the time when the written agreement heretofore set out was entered into at Minneapolis between the defendants and Skinner; that both before and after the execution of said agreement of November 6, 1896, the plaintiff herein was fully acquainted and conversant with all the matters and things pertaining thereto. It further appears that about February 1, 1897, plaintiff went to New Whatcom and represented to the defendants that he "was the sole owner of the agreement" (above set out), and was the " sole owner and holder of the two promissory notes " executed and delivered by the defendants to Skinner as aforesaid," and was the sole owner and holder of all that stock of goods referred to in said agreement of November 6th, and that he, the said Griffith, became the sole owner and holder of all of said property, and of all the interests and rights of said Skinner therein, by purchase, assignment and delivery of, from and by said Skinner." It appears, also, that about that time, viz., early in February, 1897, the defendants borrowed from the plaintiff the sum of $500 for the purpose of paying off an incumbrance which was upon a part of the real estate theretofore conveyed by them to Skinner. The amount at that time owing by the defendants was estimated to be $4,800, which was made up of the two notes aggregating $3,700 and interest, $500 cash advanced by the plaintiff, and certain expenses incurred by him. On February 15, 1897, the following written agreement was entered into between the parties hereto, viz.:

" This instrument witnesseth: That

Whereas, the undersigned, J. M. Griffith, of Minneapolis, Minnesota, and H. B. Strand and Josephine M. Strand, his wife, of New Whatcom, Washington, have entered into

certain agreements whereby, among other things, E. W. Purdy of New Whatcom, Washington, is constituted and appointed as the agent respectively of said parties, and

Whereas, the said J. M. Griffith is the owner and in possession of a certain stock of goods, wares and merchandise, consisting of dry goods, notions, clothing, etc., the same being now in the city of Minneapolis, Minnesota, and more specifically described in the invoice of the same, a copy of which invoice is hereto attached, and

Whereas, the said J. M. Griffith has agreed to sell and deliver the same to the said H. B. Strand and Josephine M. Strand, the said Strand and wife to pay the freight thereon from Minneapolis, such delivery to be contemporary with the delivery by the said H. B. Strand and Josephine M. Strand of a chattel mortgage upon the same, which chattel mortgage is hereto attached, referred to and made a part hereof, and also contemporary with the delivery as a further condition of said sale by the said H. B. Strand and Josephine M. Strand at the same time of that certain mortgage upon real estate, of even date herewith, which mortgage is to be delivered to the said J. M. Griffith as additional security for the unpaid purchase money for said stock of goods, said last named mortgage being hereto attached.

Now, therefore, this instrument is hereby executed and delivered to the said E. W. Purdy, together with said mortgages as aforesaid, with the understanding and agreement and with the instruction to the said E. W. Purdy that the said stock will be shipped by the said J. M. Griffith to the said E. W. Purdy, as the agent of the said J. M. Griffith, and that upon the receipt of the same by the said E. W. Purdy at New Whatcom, Washington, that he is forthwith to place the said stock, or cause the same to be placed in the store room of the said H. B. Strand, situate on Elk street, in the city of New Whatcom, Washington, on lot eleven (11), in block fifty (50), according to the plat of the town of New Whatcom, as filed for record in the office of the auditor of Whatcom county, Washington; and when the same is placed therein, that the said E. W. Purdy is to deliver the possession thereof to the said H. B. Strand and Josephine M. Strand, his wife, provided the freight aforesaid shall have been paid by said Strand and wife, and

provided that contemporary and simultaneously with such delivery the said E. W. Purdy is also to deliver to the firm of Dorr & Hadley, as attorneys of the said J. M. Griffith, the two said mortgages hereto attached, as mortgages to the said J. M. Griffith, the same being delivery to him, and after the delivery of said stock of goods and the delivery of said mortgages as aforesaid, the said E. W. Purdy is to act as the collecting, receiving and remitting agent of the said J. M. Griffith of the proceeds of the sales from said stock, to whom all of said proceeds are to be daily paid over by the said H. B. Strand and Josephine M. Strand, his wife. It being further understood and agreed that the said E. W. Purdy is to receive as compensation for his services as such collecting and remitting agent, of one per cent. upon all moneys so collected by him, the same to be deducted from the amounts so collected, which deduction he is hereby authorized to retain from said collections in payment of his said services, the proceeds remaining in his hands after such deductions to be remitted by him to the said J. M. Griffith and applied upon the note secured by said mortgages; but the said J. M. Griffith is not to be charged with the amount so retained by the said E. W. Purdy.

In addition to the provisions contained in said chattel mortgage, it is understood and agreed by the parties hereto that the said H. B. Strand may, if in the course of his business it may seem best so to do, exchange goods from said stock for produce or other valuable articles of trade which can immediately be turned into money to good advantage or to better advantage than the said stock not to exceed the amount of two hundred dollars ($200) at any one time.

It is further agreed that at all times the said E. W. Purdy, as the agent of the said J. M. Griffith, shall have the privilege of inspecting said stock and checking the same with the invoice thereof, and of satisfying himself of the proper fulfillment of the provisions in said chattel mortgage contained, on the part of the said H. B. Strand and Josephine M. Strand, his wife, but the said J. M. Griffith shall not sustain any expense or charges occasioned thereby, the same, if any should occur, to be paid by the said H. B. Strand and Josephine M. Strand, his wife.

In testimony whereof, the parties hereto have hereunto set their hands and seals this 15th day of February, A. D. 1897.

Signed, sealed and delivered
   in presence of          . . . . . . . . . . . . . . [Seal.]
. . . . . . . . . . . . . . . . .     . . . . . . . . . . . . . . [Seal.]
. . . . . . . . . . . . . . . . .     . . . . . . . . . . . . . . [Seal.]"

The mortgages referred to in the preceding agreement are the mortgages which are sought to be foreclosed in the present action.   The answer alleges

" that prior to making the said agreement of February 15, 1897, between plaintiff and defendants, the plaintiff was questioned by defendant, H. B. Strand, as to the condition of said stock of goods, and was by the plaintiff assured that said stock was of the amount and character heretofore described, and was in the same condition that it was at the time of the making of said contract between said Skinner and defendant;   and relying upon such assurance and the representations theretofore made by said Skinner, as aforesaid, these defendants entered into the said agreement of February 15th, and executed their said note [for $4,800] and mortgages sued on and sought to be foreclosed in this action."

Continuing, the answer shows that the stock was delivered to the defendants at New Whatcom about March 15, 1897, when, upon inspection, they learned for the first time of its condition.

Respondent urges that, under the rule which presumes that all oral agreements merge into the written one, it must be presumed that the contract of November 6, 1896, between Skinner and the appellant speaks the truth.   That agreement sets forth that the goods, wares and merchandise have been " fully inspected by the said first party;" also that Strand waives " all claims for damaged goods, shortage and prices."   The position of the respondent is that the fraud which will enable a party to avoid a written

contract, or to vary or contradict its terms, must relate to the *execution* of the contract itself, and there is some authority for the position. *Mitchell v. Universal Life Ins. Co.*, 54 Ga. 289; *Angier v. Brewster*, 69 Ga. 362. But we think the better rule, and the one which is supported by the great weight of authority, is stated by Mr. Bigelow in his work on the Law of Fraud (p. 175), as follows:

" Though there be a written contract between the parties, this   .   .   .   does not preclude parol proof of fraudulent representations made at the same time as an inducement to making it; *and this whether the representations relate technically to the execution of the contract,* so that *non est factum* could be pleaded at law, or not."

In a foot note the author states that it is an entire mistake to say that the fraud must relate to the execution of the contract. See, also, *Hoitt v. Holcomb*, 23 N. H. 535; *Race v. Weston*, 86 Ill. 91; *Mayer v. Dean*, 115 N. Y. 556 (22 N. E. 261); *Amer v. Hightower*, 70 Cal. 440 (11 Pac. 697).

In *Hoitt v. Holcomb, supra,* it is said that the fraud must relate " to a point material to the contract, but it is immaterial whether it relates to the consideration or the execution of the contract."

It is next urged that, inasmuch as appellants never sought a rescission of the contract or offered to return the property, or made any objection prior to the filing of the answer, they should be held to have waived any right which may have existed to treat the sale as fraudulent; and numerous authorities are cited by counsel in support of this contention. But an examination of them discloses that they are all cases wherein rescission was claimed or attempted. They therefore are not in point, for here the appellants do not seek a rescission. On the contrary, as disclosed by their answer, they have affirmed the contract and seek to recoup the damages sustained by them from having been led into it. Such

a course is sanctioned by all of the authorities. In 8 Am. & Eng. Enc. of Law, p. 819, the rule is thus stated:

"The defrauded buyer may, instead of rescinding the contract, stand to the bargain, even after he has discovered the fraud, and recover damages therefor, or recoup in damages, if sued by the vendor; for the affirmance of a contract by the vendee, after discovery of the fraud, merely extinguishes his right to rescind. . . ."

We come now to a more serious objection, which is urged to the answer. The question which it raises may be thus stated: Do the representations and inducements, which are alleged to have been made and relied upon, relate to matters of fact, upon which the defendants could place reliance, or to matters of opinion and judgment, concerning which the law required the defendants to judge for themselves? It must not be forgotten that the contracting parties were dealing at arm's length. No fiduciary relations existed between them—nothing to inspire confidence or disarm suspicion—and there was no imbecility of age, weakness or disease. The property in question was at hand, and an inspection of it by the defendants could have been made had they insisted upon it. The representations related solely to quantity, quality and value, the truth or falsity of which could have been determined by an inspection. Under such circumstances, we think it will not do to hold that a party may successfully complain of his own failure to exercise ordinary care, prudence and caution, when, by the exercise thereof, the injury of which he complains could not have arisen. The principle underlying the present discussion has been repeatedly announced by this court, and must, we think, be regarded as settled. In *Washington Central Imp. Co. v. Newlands*, 11 Wash. 212 (39 Pac. 366), this court said:

"If people having eyes, refuse to open them and look, and having understanding refuse to exercise it, they must

not complain, when they accept and act upon the representations of other people, if their venture does not prove successful. Written contracts would become too unstable if courts were to annul them on representations of this kind."

In *West Seattle Land & Imp. Co. v. Herren*, 16 Wash. 665 (48 Pac. 341), it was held that representations made by a vendor to induce a purchaser to buy, although false, were not grounds for rescission, when the truth or falsity of them could have been readily ascertained by the purchaser by investigation on his part. In our judgment, no sufficient excuse is advanced by defendants for their omission to inspect the goods prior to entering into the contract of November 6th, and we are bound to conclude that, if the present action were by Skinner, with whom the defendants originally dealt, and who was the vendor under the contract of November 6, 1896, the defense here interposed could not avail.

But even if it should be held that, as against Skinner, were he plaintiff, the answer would be sufficient, it in no wise follows that it is such as against the present plaintiff. There is not an allegation in the answer which connects plaintiff with any fraud practiced by Skinner. True, the answer asserts that he was present when different conversations occurred between Skinner and the defendants, but it is not pretended that he was interested in the goods at that time, or that he was a party to the negotiations that were then pending, or that he was acting in collusion with Skinner, or assisting him in any attempt to defraud the defendants, or bound, by reason of his relations to the parties or interest in the subject matter of their conversation, to take note thereof; and it affirmatively appears from the answer that Skinner had parted with all interest in this stock of goods prior to the execution of the note and mortgages which are the subject of the present action. The new agreement which was entered into was between new parties. It

was complete in all its terms and details, and, giving the answer the most liberal interpretation permissible under the rules of good pleading, its allegations fall short of showing such fraud on the part of the present plaintiff as would enable defendants to avoid the contract or recover damages for its enforcement. The allegation that prior to the making of the agreement of February 15, 1897, between plaintiff and the defendants, plaintiff was questioned by the defendants as to the condition of said stock of goods, and they were assured that it was in the same condition that it was at the time of making said contract between Skinner and the defendant, cannot avail the defendants, for it is not shown that such representation was false. Indeed, the contrary is fairly inferrable from the answer itself.

Viewed in its most favorable light, we think the answer insufficient, and the demurrer was properly sustained. Affirmed.

REAVIS, ANDERS and DUNBAR, JJ., concur.