[No. 9904.  Department Two.  February 26, 1912.]

AURORA LAND COMPANY *et al., Respondents*, v. DELLA
KEEVAN *et al., Appellants*.[1]

BILLS AND NOTES—CONSIDERATION—DEFENSES.  False representations on the sale of a draying outfit by a bank to a partnership, are not a defense to a note for $500, given by one of the partners and another person to the bank in connection with the sale, and discounted, and placed to the credit of the copartnership, and used in part payment of the outfit, since the consideration of the note was an actual loan of $500.

EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACTS—NOTES.  Parol evidence that a note made by one member of a partnership and another person was to be paid by the partnership instead of the makers is inadmissible as varying the terms of the writing.

SALES—FRAUD—FALSE REPRESENTATIONS—OPINIONS.  Where parties were dealing at arm's length, and the seller did nothing to deceive or mislead, representations as to the condition of horses, wagons, and equipment and the cost of putting the same in repair are mere expressions of opinion and not actionable, where the property was at hand and the buyers had every opportunity to make examination and inquiry.

SALES—FRAUD—RESCISSION BY BUYER—LACHES.  A buyer cannot rescind a sale of wagons, teams, and equipment, on account of false representations as to their condition, where nothing was done calculated to deceive, the same were at hand and could have been examined, the condition was fully ascertained a day or two after the sale, and no steps taken to rescind for five months.

JUDGMENT—CONCLUSIVENESS—BAR—MATTERS CONCLUDED.  A judgment in an action for an accounting, brought by the receiver of a copartnership against a bank, is conclusive on any issue as to whether the bank had in its possession funds belonging to the partnership.

Appeal from a judgment of the superior court for King county, Prigmore, J., entered April 25, 1911, in favor of the plaintiffs, upon the verdict of a jury by direction of the court, in an action on a promissory note.  Affirmed.

*J. E. McGrew*, for appellants.

*F. J. Carver* and *John Slattery*, for respondents.

[1] Reported in 121 Pac. 469.

ELLIS, J.—This action was brought on February 14, 1910, by the Aurora Land Company, on a promissory note dated February 3, 1909, for $500, executed by the defendants, appellants here, to the respondent, Northern Bank & Trust Company, the note having been assigned to the land company for the purpose of collection only. On motion of the defendants, who claimed that the note was procured through fraud, the bank was made a party plaintiff. The defendants answered, setting up as matters of defense, that there was no consideration for the note; that the note was to be paid by a copartnership, of which the defendant Healy was a member; that the note was made in connection with a conditional sale contract to the copartnership, which contract was induced by fraud and false representations on the part of the bank; that the bank having rescinded and cancelled the sale contract and resumed possession of the property, was estopped from collecting the note. These allegations were put in issue by the reply. The only testimony actually taken in defense was that of the defendant Healy. The trial court being of opinion that this testimony conclusively showed that there was no valid defense to the note, it was agreed that counsel for defendants state fully what he expected to prove in addition thereto, in order that the court might determine whether there would be any utility in receiving the evidence. This was accordingly done; and the court being still of opinion that, if the defendants proved all that they offered, so far as admissible, their evidence would still be insufficient to constitute a defense, directed a verdict for the plaintiffs, and entered judgment thereon, from which judgment the defendants have appealed.

The testimony of the appellant Healy was to the effect that he was one of a copartnership, consisting of himself and two others, doing business as Alaska Transfer Company; that, at about the time of the making of the note here in question, the bank sold to the copartnership, for an agreed consideration of $7,300, a certain draying outfit, under a conditional sale

contract, which is in evidence.   This contract provided that
$250 be paid in cash upon its delivery, and the remainder in
installments, and that the copartnership should, on delivery
of the contract, place on deposit in the bank the sum of $750,
to secure performance of certain stipulations in the contract.
He further testified that he deposited $500 in the bank to
the credit of the copartnership, and that he and the defend-
ant Keevan executed the note for $500 here in question to the
bank, which thereupon placed also to the credit of the co-
partnership the sum of $500, proceeds of the note, making
the deposit of the copartnership $1,000; that out of these
deposits there was paid to the bank the $250, first payment
upon the sale, leaving $750 on deposit as required by the
contract; that his two partners were familiar with the dray-
ing outfit, but that he was not, and that the president of the
bank and its agent, one Dickson, represented to him that the
horses, wagons and equipment were in good condition, and
the outfit could be placed in good repair for about $400;
that he refrained from making an examination because the
president of the bank, on February 3, 1909, when the sale was
closed, told him that the sale must be closed at once, as an-
other trade was pending; that he made no inquiry from his
partners as to the condition of the property, but acted upon
the representations of the bank's president and agent; that
the property was in the city of Seattle, near where he roomed,
and he could have seen it at any time, especially in the evening
when the horses were in the stable; that he went to the place
the day after the sale was closed and remained there repairing
the outfit from then almost continuously until about May 10,
1909; that the wagons, teams and harness were not as repre-
sented, but were in very bad condition and the lowest estimate
he could get for repairs was about $1,100.   There was no
evidence, or offer of evidence, that either he or his partners
ever rescinded, or sought to rescind, the contract on account
of the alleged misrepresentations, or for any other reason.

The offer of evidence was to the effect that $700 was paid

upon the contract in cash; that between $1,100 and $2,000 in collectible bills was turned over to the bank and its agent for collection to apply on the contract; that the bank and its agent refused to pay claims contracted for by the partnership, and applied the money to their own use; that the note sued upon was given as a part of the consideration for the purchase of the transfer property, with the understanding that it would be paid out of the proceeds of the transfer business; that ample money to pay the note had been received by the bank, but was not so applied; that the copartners, while the property was in their possession, put it in good repair at a cost of $600; that the bank wrongfully forfeited the contract and resumed possession of the property in order to resell it to other parties without accounting for the money received from the copartnership.

It was admitted that a receiver was appointed to close up the affairs of the partnership; that he brought an action against the bank for an accounting; that a trial was had in that action and that it was finally disposed of, but just what the final judgment in that action was does not appear.

These are the material matters brought out by the evidence and offers of evidence as a defense to the note. It is clear that they did not constitute a valid defense, and that the court did not err in refusing to submit the case to the jury.

The evidence makes it plain that the consideration of the note was an actual loan of $500. That this money was deposited to the credit of the copartnership is immaterial, since there was no evidence or offer of evidence that this was not with the knowledge and in accordance with the intention of the makers of the note.

The evidence offered to the effect that the note was to be paid by the copartnership, rather than by the appellants, the makers of the note, was inadmissible. It tended to vary the terms of the note itself, the written undertaking of the makers to pay. It may be that, as between the parties, there was an agreement that the partnership would pay the note, but this

could in no sense affect the right of the bank to look to the makers of the note to pay the money as therein stipulated.

The fact that the note was given in connection with the conditional sale is also immaterial, since the evidence relied upon as establishing fraud in that transaction was wholly insufficient for the purpose. It is obvious that the representations of the bank and its agent were merely expressions of opinion. The parties were dealing at arm's length. It is not claimed that the bank or its agent occupied any peculiar relation of trust to the defendant Healy. He had every opportunity to examine the property, and his partners were thoroughly familiar with it. Since he did not choose to look at it nor to make any inquiry of them as to its condition he cannot now complain. There was no evidence, nor offer of evidence, that either the bank or its agent did anything reasonably calculated to deceive him or to prevent his adopting either of these obvious and easy methods of acquiring full knowledge. Even if he had sought a rescission of the contract of purchase, he must have failed under the evidence here offered. *Washington Cent. Imp. Co. v. Newlands,* 11 Wash. 212, 39 Pac. 366; *Griffith v. Strand,* 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell,* 26 Wash. 576, 67 Pac. 216; *Samson v. Beale,* 27 Wash. 557, 68 Pac. 180; *Sherman v. Sweeny,* 29 Wash. 321, 69 Pac. 1117; *Hulet v. Achey,* 39 Wash. 91, 80 Pac. 1105; *Hubenthal v. Spokane & Inland R. Co.,* 43 Wash. 677, 86 Pac. 955; *Jones v. Reynolds,* 45 Wash. 371, 88 Pac. 577; *Pigott v. Graham,* 48 Wash. 348, 93 Pac. 435, 14 L. R. A. (N. S.) 1176.

Moreover, there was no attempt to rescind the contract. The condition of the property, whatever that condition was, became fully known to the appellant Healy a day or two after the sale. He and his partners retained the possession and use of the property till sometime in July, 1909. So far as the record shows, no offer to rescind was made and no ground for rescission suggested until this suit was brought. Even if the note had been confessedly received by the bank as part pay-

ment on the sale, as claimed by appellant, and not for a loan, it would now be too late to claim a failure of consideration on the ground of fraud.

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted." *Grymes v. Sanders*, 93 U. S. 55-62.

See, also, *Eldridge v. Young America etc. Min. Co.*, 27 Wash. 297, 67 Pac. 703; *Provident Loan & Trust Co. v. McIntosh*, [68 Kan. 452, 75 Pac. 498] 1 Am. & Eng. Ann. Cases, 906.

A consideration of the evidence and the offered evidence makes it equally clear that the bank was not precluded from collecting the amount due on the note by reason of the fact that it had declared the contract forfeited for nonpayment of installments due thereon, and had resumed possession of the property. The evidence of Healy himself places it beyond cavil that the note was given for an actual loan of money. The fact that the money was used in connection with the purchase of the property does not alter the status of the note as evidencing an independent debt of its makers. As such, it was due to the bank whether the sale was carried through to final payment or not.

The claim that an accounting would show that the bank had funds in its hands belonging to the copartnership sufficient to pay the note is also untenable. The admission that the receiver of the partnership had sued the bank for an accounting, and that the suit had proceeded to a final judgment, effectually disposes of this contention. Whatever the judgment in that action was, it was conclusive and merged all claims for an accounting. In the case before us, no judgment in favor of the copartnership or in favor of Healy was pleaded as a set-off against the note, nor was there any offer

to prove any such judgment. The appellants here could assert no right to an accounting except through the copartnership. The suit by the receiver was, therefore, conclusive of that matter.

The judgment is affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.