[No. 11187.   Department Two.   August 12, 1913.]

E. S. STEWART et al., Respondents, v. ROY E. LARKIN et al.,
Appellants.

E. S. STEWART et al., Respondents, v. JOHN F. LARKIN et al.,
Appellants.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE—MISREPRESENTATIONS. Vendees are not entitled to rescission of contracts for the sale of land, for false representations that the lands would be irrigable by means of an irrigation project, which was mere promoter's talk and upon which nothing had been done, the vendees made their own investigation, and the parties were strangers to one another having equal means of knowledge; as the representations were not as to existing facts, but mere opinions based on hearsay.

[1]Reported in 134 Pac. 186.

APPEAL—NOTICE OF APPEAL—DESIGNATION OF PART OF JUDGMENT—
REVIEW. Where a judgment was given for plaintiff without any ref-
erence to defendant's cross-complaint, a notice of appeal by defend-
ant designating the judgment appealed from as one in favor of
plaintiff for a specified sum and costs, is not sufficient as an appeal
from that part of the judgment dismissing the cross-complaint,
which accordingly cannot be reviewed; in view of Rem. & Bal. Code,
§ 1719, requiring appellant to designate with reasonable certainty
the part of the judgment appealed from.

Cross-appeals from a judgment of the superior court for
Whatcom county, Kellogg, J., entered September 3, 1912, in
favor of the plaintiffs, except as to defendant Miller, in an
action for rescission. Reversed except as to defendant Miller.

*Jeremiah Neterer* and *Moulton & Henderson,* for appel-
lants.

*Thomas Smith* and *E. C. Million,* for respondents Stewart
*et al.*

*Jeremiah Neterer,* for respondent Miller in answer to re-
spondents Stewart *et al.*

MORRIS, J.—These are consolidated actions to rescind con-
veyances of land and to recover back purchase price and dam-
ages. The land lies in Benton county, east of Kennewick, in
what is known as the Horse Heaven country; and the ground
of action is that appellants, in order to induce the purchase
of lands, falsely represented that the lands would be irrigable
by means of a canal or ditch which would be a part of what is
referred to in the record as the "Klickitat Irrigation Proj-
ect." Judgment went against all defendants except L. E.
Miller, from which appeal is taken. The plaintiffs bring a
cross-appeal because of the court's failure to find against
Miller.

Accepting the evidence most favorable to respondents, it
appears that Stewart, representing himself and the other re-
spondents, went to Kennewick for the purpose of looking up
land in that vicinity. While at Kennewick he met appellants
McGuire and Van deBogart, real estate agents, to whom he

was introduced by Miller; that McGuire showed him a number of pieces of land, but finally they concentrated their attention upon the two pieces in suit, owned by the Larkins. McGuire told Stewart that the canal of the Klickitat company when constructed would run on the north side of the divide in such a way as to bring the two pieces of land beneath and subject to irrigation from it. Stewart visited the land a number of times, made inquiries as to price and methods of farming from an old acquaintance owning lands in the vicinity, and from others at Kennewick, and finally contracted to take the land at $20 an acre including the wheat crop. McGuire also gave Stewart the address of a man at Prosser who was supposed to know something about the irrigation scheme of the Klickitat company; at least, was interested in obtaining contracts for water rights. McGuire also made statements to Houser, one of the respondents, to the effect that the land would be under the ditch, and told Houser of engineers in Seattle who were supposed to have something to do with the scheme. Other testimony is to the effect that Stewart was told by McGuire to stop at Seattle on his return and investigate as to the irrigation scheme, as all he knew about it was what had been told him; and the old acquaintance of Stewart's who owned land in the vicinity also testified that, when Stewart inquired of him as to the price of land and its possibilities, he told him that he knew nothing of the irrigation project other than what he had heard, and asked Stewart to look into the matter and advise him upon his return, and that when Stewart returned he told him he was satisfied, and that "if the ditch did go through he would irrigate it and cut it up into tracts, and if the ditch did not go through he could farm it as a dry farm." It is clear from all of the evidence that none of the parties knew anything about this irrigation project other than hearsay, and that it was proposed to run a ditch through the Horse Heaven country bringing the water from the Klickitat river some one hundred and fifty miles away. No work had been

done, however, and the ditch and the project of which it was a part seems at this time to have been nothing more than a promoter's scheme. It is also clear that lands in the vicinity of the lands in suit, of the same general nature and quality, were valued at from $20 to $30 an acre, so that it is apparent respondents received lands of the value paid for.

These are the main facts upon the point at issue, although there is much evidence as to matters occurring subsequent to the entering into the contract which cast little if any light upon the false representations claimed by one party and denied by the other. It does not seem to us that these facts support the judgment. All parties interested in this purchase knew nothing about this ditch except hearsay. Stewart knew that McGuire, nor any other person, could give him any positive or definite information as to a ditch which at that time was known to be nothing more than a part of some great irrigation scheme that some company proposed to some day undertake. There was no ditch, and Stewart and the other respondents knew there was no ditch, and the statement that there would some day be a ditch could not have been accepted by them as a statement of a positive fact nor received other than the opinion of the man who made it. There was no attempt to hide anything from respondents. Stewart visited the land a number of times, made inquiries as to its value and how it could best be farmed, and when respondents entered into their contract to purchase it they knew as much about the land as any one; or if they did not, it must be laid to the failure of the independent investigation they undertook to secure such information.

It has always been the law that where the parties deal as strangers and the means of knowledge are equally available and the lands subject to the inspection of the purchaser, and he avails himself of the opportunity of inspection afforded him, he cannot be heard to say that he has been deceived, even though the truth has been withheld from him or the facts misrepresented, as the true facts are as available to him and

as much within his knowledge as that of the one with whom he deals. *West Seattle Land & Imp. Co. v. Herren*, 16 Wash. 665, 48 Pac. 341; *Griffith v. Strand*, 19 Wash. 686, 54 Pac. 613; *Walsh v. Bushell*, 26 Wash. 576, 67 Pac. 216; *Samson v. Beale*, 27 Wash. 557, 68 Pac. 180; *Zilke v. Woodley*, 36 Wash. 84, 78 Pac. 299; *Pigott v. Graham*, 48 Wash. 348, 93 Pac. 435, 14 L. R. A. (N. S.) 1176; *Aurora Land Co. v. Keevan*, 67 Wash. 305, 121 Pac. 469; *Conta v. Corgiat*, *ante* p. 28, 132 Pac. 746.

Appellants contend their judgment is well founded upon the rule announced in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102, and other like cases, where it has been held that the tendency of modern cases is to restrict, rather than to extend, the doctrine of *caveat emptor*, and that the unmistakable drift is towards the doctrine that wrongdoers cannot shield themselves from liability by asking the law to condemn the credulity of their victims and give them an unbridled license to lie and deceive. No better illustrations of this modern tendency can be found than in the decisions of this court for the past few years; but it will be found that, in all of these late cases, there was a false assertion of an existing fact the truth of which was peculiarly within the knowledge of the vendor, or means of knowledge; or the property was at a distance and the opportunity of ascertaining the true facts not readily ascertainable; or the misrepresentation was made for the purpose of inducing the other party not to make an investigation and ascertain the true facts; or the vendor knew that the vendee did not intend to make a personal investigation but relied absolutely on the truth of the facts communicated to him. It was not intended, in any of these cases where the decision has been based upon some one of the above facts, to attempt to depart from the rule here first asserted, and the distinction between these two rules and the facts to which each is applicable is pointed out in *Wooddy v. Benton Water Co.*, *supra*, quoting from 14

Am. & Eng. Ency. Law (2d ed.), 120, 121, where the rule is thus stated:

"By the overwhelming weight of authority, ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge, and with the intention that they shall be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself. By the weight of authority, and in reason the rule that a person who is voluntarily blind as to facts concerning which false representations are made cannot complain of the same, applies only where the parties have equal present opportunity and means to ascertain the truth at the time of the transaction, and does not apply merely because it is possible to ascertain the facts. Indeed, it has been held that a person is justified in relying on a representation made to him, in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth."

In *McMullen v. Rousseau*, 40 Wash. 497, 82 Pac. 883, this court said:

"The main contention of the appellants is that this case comes within the rule often announced by this court that, where the vendor and purchaser are dealing at arm's length, and where the subject-matter of the sale is at hand, the purchaser must protect himself and cannot rely upon misrepresentations made by the vendor. This rule is firmly established where the representations relate to the subject-matter of the sale which is at hand, or to other facts the truth of which may readily be ascertained by the exercise of ordinary care and prudence. But the converse of this rule is equally will established where the subject-matter of the sale is not at hand, so that the truth or falsity of the representations concerning it may be ascertained, or where the representations relate to facts within the knowledge of one of the parties, and the truth or falsity of such representations cannot be ascertained by the other party upon reasonable investigation or by the exercise of reasonable care and prudence. Such are the cases of *O'Connor v. Lighthizer*, 34 Wash. 152, 75 Pac. 643;

*Mulholland v. Washington Match Co.,* 35 Wash. 315, 77 Pac.
497; *Stack v. Nolte,* 29 Wash. 188, 69 Pac. 753; and *Lawson
v. Vernon,* 38 Wash. 422, 80 Pac. 559."

In the present case, there was no misstatement of an exist-
ing fact peculiarly within the knowledge of these appellants
as to which the respondents did not have equal present op-
portunity and means to ascertain the truth. The thing which
was of value to respondents if they sought irrigated lands was
a ditch from which they could obtain water. They knew there
was no ditch and that the whole project was nothing more
than promoters' talk which might or might not materialize.
They knew that appellants could in no wise control the build-
ing of this ditch nor shape its course when it was built, and
that any statement that might be made as to its existence or
course could be nothing more than. the giving of an opinion
based, not upon personal knowledge, but upon information
derived from others. To say that, under such circumstances,
a contract may be rescinded is to announce a rule that must
depend upon its assertions for its authority.

The appellants John F. Larkin and wife filed a cross-com-
plaint below in which they demanded judgment against re-
spondents for the sum of $598.95, representing an item of in-
terest they were compelled to pay because of the default of
respondents in paying interest upon a mortgage upon a
portion of the land in suit, which mortgage also covered ad-
ditional lands of John F. Larkin; and in their brief they
ask for a reversal of the judgment below and for an affirma-
tive judgment there in their favor for this $598.95. We do
not go into this demand as it does not seem to us that it is
properly before us. The judgment below makes no reference
to the demand of the cross-complaint. It simply grants judg-
ment to respondents for $2,419.99 under their prayer for re-
lief, and awards costs to Miller. From this judgment it can-
not be ascertained that any question of affirmative relief to
the Larkins was ever submitted to the court below or passed
upon by it. The notice of appeal refers to the judgment ap-

pealed from as, "which judgment is in favor of the plaintiffs that they recover of and from the defendants the sum of $2,419.99, together with costs." The appeal bond refers to the judgment appealed from as "against the above named judgment debtors for the sum of $2,419.99, together with costs." We cannot find in this notice or bond any reference to a judgment dismissing the cross-complaint, if it be assumed that this judgment so adjudicated, nor anything from which it could be ascertained that any such cross-complaint was submitted to the court for its determination. Our statute provides that the appellant shall, in his notice of appeal "designate with reasonable certainty from what judgments or orders, whether one or more, the appeal is taken;" and under this same statute, Rem. & Bal. Code, § 1719 (P. C. 81 § 1189), it is permissible to appeal from a part of the judgment only. When, therefore, the judgment consists or is interpreted as consisting of three parts, (1) for a sum of money in favor of plaintiffs and against certain defendants, (2) dismissing a cross-complaint filed by some of the defendants, and (3) in favor of other defendants for costs, and the notice of appeal only describes that part of the judgment which adjudicates in favor of the plaintiffs upon their demand against the defendants, it must be held that the appeal is taken from that part only. For these reasons, we do not consider this notice of appeal sufficient to call for a review of the demand of John F. Larkin and wife upon their cross-complaint. What we have said is sufficient to sustain the judgment upon respondents' cross-appeal from that part of the judgment in favor of Miller; and as to him the judgment is affirmed. In all other respects it is reversed and the cause remanded with instructions to dismiss.

CROW, C. J., FULLERTON, MAIN, and ELLIS, JJ., concur.