[No. 12186. *En Banc.* June 16, 1915.]

E. M. Gordon *et al., Respondents,* v. C. D. Hillman *et al., Appellants.*[1]

Evidence—Parol to Vary Writing—Admissibility. Evidence of an oral agreement contradicting a clause in a written contract that the parties had investigated the properties to be exchanged, is admissible in an action for rescission, upon an allegation of fraud in procuring the contract, and to show that the contract actually entered into was fraudulent and void.

Appeal—Review—Harmless Error—Admission of Evidence. The admission of incompetent evidence is not prejudicial error, where the cause is triable *de novo* on appeal.

Exchange of Property — Rescission — Fraud—Evidence—Sufficiency. A judgment for rescission of an exchange of properties is sustained where it appears that plaintiff was grossly overreached by false representations, that notes given for a face value of $47,000, as part consideration, were practically worthless, that, though the contract recited that both parties had examined the properties and were satisfied, the complainant understood it as a tentative agreement, under which he would have an opportunity to investigate titles and securities and he offered to rescind within two weeks, as soon as his investigation had disclosed the unconscionable nature of the transaction.

Vendor and Purchaser—Misrepresentation of Vendor—Caveat Emptor. The rule of *caveat emptor* should not be extended so as to deny remedy to an improvident purchaser against false representations accompanied with unconscionable gains on the part of a fraudulent vendor.

Vendor and Purchaser—Rescission—Tender of Interest. Upon seeking rescission, failure to tender interest payments made by defendants would not defeat a judgment for plaintiffs, especially where the payments were nominal in amount and were taken care of in the decree of the court.

Holcomb, Main, Parker, and Chadwick, JJ., dissent.

Appeal from a judgment of the superior court for King county, Smith, J., entered February 28, 1914, in favor of the plaintiffs, in an action for rescission, tried to the court. Affirmed.

[1]Reported in 158 Pac. 96.

*Gay & Kelleran,* for appellants.

*Byers & Byers,* for respondents.

FULLERTON, J.—On July 7, 1913, the respondents and the appellants entered into a written agreement for the mutual exchange of certain properties. The agreement described the property to be exchanged in detail, provided that the title to the several properties should be passed by deeds and assignments on the day following the execution of the contracts, that abstracts to the title to the real property to be exchanged should be furnished within ten days thereafter, and that each party should cure any defect in the title to the property conveyed by them that should be shown in the abstracts. The agreement also contained the following recital:

"It is agreed that both parties hereto have personally examined and inspected the respective properties received by such parties in this exchange, and each party hereby declares himself satisfied from such personal inspection and examination as to the quality of the property to be conveyed and delivered to him under this agreement and hereby acknowledges his satisfaction and approval of such property from such personal examination, inspection and approval."

The title deeds, bills of sale, and assignments necessary to pass the title to the properties as agreed upon were exchanged on the day agreed upon, and the abstracts also were delivered within the time specified in the agreement, and some defects discovered in the titles were corrected. During the course of the investigation, however, the respondents conceived that they had been overreached and defrauded in the transaction, and thereupon sought a rescission of the agreement with the appellants. The appellants refused to make a rescission, whereupon the respondents, on July 24, 1913, began the present action to enforce rescission. Recovery was had by the respondents after an extended trial, and this appeal is from the judgment entered.

The errors assigned by the appellants which present questions of law relate principally to the admission of evidence thought to be incompetent. It is claimed, for example, that evidence tending to impeach and vary the terms of the written contract was admitted; and particularly is it objected that the respondents were permitted to deny that they had examined the property agreed to be received in exchange by them and that they were satisfied as to the quality and value thereof. But the contention overlooks the fact that the respondents alleged that the procuring of this contract was a part of the scheme to defraud them of their property. Under such an allegation, it was competent to show all of the circumstances surrounding the transaction—oral promises and agreements contradicting and varying the writing, as well as all the other matters—not for the purpose of showing a different contract from that actually entered into, but for the purpose of showing the contract actually entered into to be fraudulent and void. The pertinency of the evidence particularly objected to is made clear by a simple recital of the facts. The respondents had not, at the time of the execution of the contract, examined all nor any considerable part of the property they were to receive in exchange as to its "quality and value," or otherwise, a fact which the appellants well knew at the time they insisted that a clause to that effect should be inserted in the contract. Clearly, under such circumstances, the recital does not estop the respondents from showing the fraudulent nature of the contract.

Objections made to certain other parts of the evidence are more pertinent, this because the evidence had no bearing upon the issues. But the admission of incompetent evidence in a cause tried by the court sitting without a jury is not a cause for a new trial, nor a ground for reversing the judgment entered and directing a judgment for the other party. Cases of this sort are triable here *de novo*, and can be reversed or modified only when the evidence properly in the record fails to sustain the judgment entered. The court dis-

cards the improper evidence and determines the cause from that which it deems pertinent to the inquiry. The ultimate question in the present record therefore is, Does the evidence pertinent to the inquiry sustain the judgment of the trial court?

Passing to the question of the sufficiency of the evidence, its perusal leaves no doubt in our minds of the fact that the respondents were grossly overreached in the transaction, and this because of the false representations of the other parties. The trade, as measured by the values put upon the properties by the respective owners, was of considerable magnitude. The respondents' property for the greater part consisted of improved income bearing property, situated in or near the business district in the city of Seattle, and had an immediate as well as a prospective value. It was incumbered for some $60,000, and while the respondents' valuation of $125,000 in excess of the incumbrance may have been exaggerated, other evidence in the record makes it clear that it had a considerable margin of value in excess of the incumbrance, possibly an excess of $60,000. The property given in exchange by the appellants consisted of notes of the face value of $60,000; lots in sundry additions in the suburbs of the city of Seattle valued at $35,000; certain tide lands at Olympia, of which the appellants held only contracts of purchase, valued at $25,000, and certain logged-off lands in Thurston and Mason counties valued at $10,000. The notes were shown to be of little or no value. One of them was for $27,000, was practically unsecured, and a judgment existed against its maker for a sum exceeding $100,000. Another was for $20,000, secured by a mortgage on certain lots in an addition to Seattle known as the Meadow Gardens tract. These lots were once owned by the appellants. They had conveyed them to one Hazen Chase at "trade prices," taking a mortgage back for the entire purchase price. Chase, on making the purchase, had expected to sell the lots to individual purchasers at a price in excess of the trade

price and thereby make a profit for himself. This scheme he had long since abandoned. The mortgaged property represented the only value the note had, and this the evidence abundantly satisfies us was grossly disproportionate to the amount of the note. Of the real property transferred from the appellants to the respondents, none was improved or income bearing, and none of it had any definite or fixed market value. Its value as a whole the evidence does not make very clear, but enough is shown to convince us that it bore no reasonable ratio to the value fixed upon it for the purposes of exchange, or to the value of the property given in exchange for it.

We think, also, that the evidence makes it clear that the respondent having charge of the negotiations was acting under a misapprehension as to the effect of his acts when he signed the contract and made the exchange of conveyances. It seems to us that he thought that these were only tentative arrangements, that the papers were to go in escrow, and that the final consummation of the deal was to take place when the abstracts were furnished and the title and values of the property were examined and approved; and further, that, had it been made known to him that these several acts were in themselves a consummation of the transaction, he would not have signed the contract nor delivered over the conveyances.

The more difficult question is whether he exercised that degree of diligence in the protection of his rights which the law compels him to exercise before he can be heard to complain of having been overreached and defrauded. But on this question, also, we are inclined to follow the conclusion of the trial court. The conduct of the respondent was in some respects as guileless in its simplicity as would be that of a child. But the fact remains that he and his co-respondent would be grossly defrauded if the exchange he agreed to make should be consummated. And while it is true the law does not look with favor upon improvidence and negli-

gence, it looks with much less favor upon that species of avarice which seeks to gain by preying upon improvidence and negligence. This especially is the rule of the more modern cases. False representations accompanied with unconscionable gains are held remediable even though the victims of the representations may not have exercised all of the diligence once thought necessary to escape the common law idea of *caveat emptor*. As we said in *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102:

"Strong language has been used by this and other courts in defining the duties of purchasers from which it might be inferred that vendors have an unbridled license to lie and deceive, but such has never been the law, and the tendency of the more recent cases has been to restrict rather than extend the doctrine of *caveat emptor*. Thus in *Strand v. Griffith*, 97 Fed. 854, the court said:

" 'There is no rule of law which requires men in their business transactions to act upon the presumption that all men are knaves and liars, and which declares them guilty of negligence, and refuses them redress, whenever they fail to act upon that presumption. The fraudulent vendor cannot escape from liability by asking the law to applaud his fraud and condemn his victim for his credulity. No rogue should enjoy his ill-gotten plunder for the simple reason that his victim is by chance a fool.' "

The contract provided that a certain note having a face value of $2,000 should be turned over to the brokers conducting the exchange, in satisfaction of the part of the commissions the respondents had agreed to pay. The note was valued in the exchange at $1,000, and in the decree the court directed that the appellants be paid that sum by the respondents in lieu of a return of the note. This was thought to be erroneous, but we think the sum awarded all that the appellants are entitled to recover. To charge the respondents with the face value of the note would be to charge them with commissions which the appellants are obligated to repay to them.

The failure to tender certain interest payments made by the appellants does not prevent a rescission. These were but nominal in amounts when compared with the total of the transactions, and were, moreover, properly taken care of in the decree of the court.

The judgment is affirmed.

MORRIS, C. J., and MOUNT, J., concur.

ELLIS, J., concurs in the result.

BAUSMAN, J. (concurring)—I concur with Justice Fullerton. We have here to do with a bargain of considerable magnitude made between a rascal and one who has behaved like a fool. That Hillman was a man of bad character was known to Gordon, who deserves little sympathy, but who acted with such promptness in rescission as not to be exposed to the doctrine of acquiescence that would shut his mouth against complaint. The properties that Hillman was giving were such as could not speedily be examined, while those of Gordon were known beforehand by Hillman and could be estimated with very little delay, yet it was not until the very signing of the bargain that Gordon knew definitely what was to be offered, and it is not to be denied that some form of investigation, such at least as looking into titles, was to be left him. His rescission, moreover, was made before he so much as recorded the instruments. So far as the real estate was concerned, the values on each side were so much inflated that a balance is not easy to strike. But upon the note, it is clear that Gordon received much the worst of the bargain, and that there was a good deal to be learned about them which he did not know and which Hillman concealed from him at the time of the exchange. One note was of $27,000 and another of $20,000. The two put together are probably not worth $5,000. Some other notes were equally bad. It is inconceivable that Gordon was not to have some little further time to check the value of the collateral which was necessary to make good the face obligations of the

makers. That this collateral proved utterly wretched in some aspects of it not before revealed is clear. I agree with Justice Fullerton, without further elaboration of details, that Gordon was very much overreached. He would, to be sure, be entitled to little assistance from a court were there in the case any circumstance of ratification or acquiescence, which, however, I do not find, notwithstanding he did not, on the first suspicious circumstances after the transaction, immediately rescind. He did rescind and offer back the unrecorded securities within a fortnight. This I consider very prompt under the circumstances.

HOLCOMB, J. (dissenting)—To my mind, neither the reasoning nor the result reached in this case is sound or consistent.

The facts of record in the case show, that these parties dealt as strangers, at arm's length; respondent Gordon was a man in the prime of life and of great business ability and experience; he himself selected the properties in controversy from a long list of properties, and he had examined most of the properties he selected, and had, or by the exercise of reasonable care and prudence could have, examined and satisfied himself as to the character and values of every other item. There were no "badges of fraud."

Possibly respondent made an improvident bargain. I am not concerned with the result reached of setting that bargain aside. But bargains are not to be set aside merely because they were improvident. The facts in this case are in no wise similar to the facts in the leading and very justly decided case of *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102, cited in the majority opinion, and other similar cases; nor to the facts in such cases as *Stone v. Moody*, 41 Wash. 680, 84 Pac. 617, 5 L. R. A. (N. S.) 799. But the facts in this case are similar to the various phases in such cases as *Baker v. Bicknell*, 14 Wash. 29, 44 Pac. 107; *Griffith v. Strand*, 19 Wash. 686, 54 Pac.

613; *Walsh v. Bushell*, 26 Wash. 576, 67 Pac. 216; *Samson v. Beale*, 27 Wash. 557, 68 Pac. 180; *Zilke v. Woodley*, 36 Wash. 84, 78 Pac. 299; *Conta v. Corgiat*, 74 Wash. 28, 132 Pac. 746; *Stewart v. Larkin*, 74 Wash. 681, 134 Pac. 186, L. R. A. 1916B 1069.

To be consistent, this case should follow these last cited cases. The judgment should be reversed.

I therefore dissent.

MAIN, PARKER, and CHADWICK, JJ., concur with HOLCOMB, J.