[No. 27349.   Department Two.   March 14, 1939.]

R. R. Nestos, *Respondent,* v. R. H. White *et al.,*
*Appellants.*[1]

*G. D. Eveland* and *E. D. Phelan,* for appellants.

*Raymond G. Wright* and *James W. Hodson,* for respondent.

BEALS, J.—In his complaint in this action, plaintiff alleged that, within six years, by written contract, and within three years, by oral contract, he had sold and delivered to defendants timber of the reasonable value of $23,843.23, of which a balance in the sum of $3,465.73 remained unpaid, for which sum, together with taxes in the sum of $75.38, which plaintiff alleged he had paid, and allowing defendants a credit in the sum of $114.06, plaintiff prayed for judgment.

Defendants answered, in effect admitting the purchase, but setting up a counterclaim, based upon an alleged partial failure of consideration, in that they alleged that the amount of the timber which they actually received was less than the amount which they contracted to buy; and that, because of certain mis-

[1]Reported in 88 P. (2d) 400.

representations of plaintiff, and mutual mistake of the parties, defendants were entitled to judgment canceling the contracts and awarding defendants judgment against plaintiff and one Samuel Barnes, who was made an additional defendant to the action.

Plaintiff replied to defendants' cross-complaint, denying any liability on his part and demanding judgment as prayed for in his complaint. The additional defendant, Samuel Barnes, also answered defendants' cross-complaint, denying liability.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in plaintiff's favor, followed by the entry of a judgment in plaintiff's favor and against defendants in the sum of $3,281.05, together with costs. Defendants were allowed no relief against Mr. Barnes. Defendants' motion for a new trial having been denied, defendants have appealed.

Error is assigned upon the findings of fact and conclusions of law as signed by the court; upon the denial of appellants' motion for a new trial; and upon the entry of judgment in favor of respondent.

The facts of the case may be briefly summarized as follows: During the summer of 1933, appellants opened negotiations with one F. L. Miller, with the idea of acquiring a tract of timber for logging. Miller interested respondent in the proposition and finally turned the matter over to respondent, who submitted to appellants descriptions of timber lands in Kitsap county, together with some reports of cruises of the timber thereon. All parties were experienced loggers and understood the value of timber in western Washington.

August 9, 1933, respondent prepared, and appellants signed, a preliminary agreement, which is in evidence, by the terms of which it was agreed that, if respondent should be able to purchase certain timber, appellants

would buy the same, and pay a specific amount for each one of three tracts, payments to be made as the timber was logged. It was provided that, as to a fourth tract, payment should be made at the rate of $2.50 per thousand feet, "for whatever merchantable timber there may be thereon," payment of the purchase price to be also made as the logging proceeded. A formal written contract was entered into February 15, 1934, embodying practically the same terms, including the following paragraph:

"As purchase price for the above described timber the second parties agree to pay to the first party Eight Thousand Fifty ($8050) Dollars for the timber on the Grimshaw claim, Six Thousand Two Hundred Ten ($6210) Dollars for the timber on the Baker claim, Three Thousand Six Hundred Eighty ($3680) Dollars for the timber on the Nordhoff claim, and Two and 50/100 ($2.50) Dollars per thousand feet for the merchantable timber on the Livingstone claim."

Two other claims were logged by appellants under an oral agreement, and were paid for on the same terms as provided in the written contract for the purchase of the timber on the Livingstone claim.

Appellants proceeded, under their contract, to log the land, making the payments per thousand called for by the contract, save as to the last 191,810 feet. No dispute between the parties arose as to the Livingstone claim, or the two claims sold under oral contract, as the timber cut from those tracts was to be paid for by measure, and appellants frankly admit that if, under the agreement between the parties, they are required to pay lump sum prices for the timber on the Grimshaw, Baker, and Nordhoff claims, according to the paragraph of the contract above quoted, they are indebted to respondent substantially in the amount demanded in respondent's complaint. Appellants contend, however, that, under the contract between the

parties, notwithstanding the terms of the contract above quoted, they were required to pay for the timber on the three claims last referred to, only on the basis of timber cut, and not the specific amounts set forth in the portion of the contract above quoted.

It is admitted that respondent showed to appellants certain cruises of the timber on these three claims, and appellants testified that respondent told them that the amount of timber actually on the claims would overrun the cruises, and that they, relying upon the cruises and the representations made by respondent, signed the contract providing for the lump sum payments. Appellants contend that the actual cut on the three claims amounted to about fifty-seven and one-half per cent of the quantity of timber which respondent stated to them would be found upon the three claims. The timber was there, open to appellants' inspection, as they knew the descriptions of the land, but appellants took no steps to determine the amount of timber on the respective tracts, testifying that they relied upon the statements made by respondent.

Respondent testified that, relying upon his agreement with appellants, he purchased the three tracts for specific amounts and not upon a stumpage basis; and contends that, by their contract, appellants agreed to pay for these three claims the specified sums set forth in the contract. Respondent also testified that he submitted to appellants the cruises of the timber, or figures condensed therefrom, as information which he had received, but without guaranty as to the correctness thereof.

Admittedly, there was less timber on these three claims than shown by the cruises. The question is simply as to which of the parties shall stand the loss.

The trial court disallowed respondent's claim for taxes paid, and awarded him judgment for the balance

due under the contract on the lump sum prices which appellants agreed to pay for the three claims above named, plus some small amount for stumpage on account of the last timber cut from the other three claims, for which payment, according to the terms of the contract, had not been made. The court allowed appellants credit for some poles and piling resold by appellants to respondent.

The contract between the parties is clear and scarcely susceptible of judicial construction. The preliminary contract is also in the evidence, and it also is couched in clear and concise language.

The trial court found that at no time did respondent act, or agree to act, as appellants' agent, nor did he at any time agree to secure for appellants contracts for any timber other than that covered by the contract between the parties.

While appellants attempted to assert, in the court below, a claim against the additional defendant, Barnes, they now concede that no liability against him was established, and suggest that their claim against him be disregarded. Mr. Barnes has made no appearance before this court.

On the issue between the parties, the evidence was in direct conflict. As early as July, 1933, respondent, with appellants, went to Kitsap county, and respondent testified that he showed appellants the corners of the Grimshaw claim. Appellants knew the descriptions of the claims and had ample opportunity to make any examination they desired. The formal contract was not signed until February following. Certainly, the contract, in providing different methods of paying for the timber on the claims covered thereby, must have flagged appellants' attention. For the timber on one of the claims they were to pay on a stumpage basis; for the timber on the other three claims they were to

pay specific sums. On two other claims which they purchased on oral agreements, they were to pay on a stumpage basis. As observed by the trial court in his oral opinion,

"When business men make as complete and as clear a final record of their oral agreements as did the parties to this suit, nothing else but very clear proof will suffice to tear down and destroy the written documents."

The case was tried at considerable length, and appellants were afforded every opportunity to introduce such evidence as they desired. The trial court expressly found that respondent

". . . at no time guaranteed any given amount of timber to exist on any of the claims covered by said contracts nor did plaintiff represent any sums as required to be paid by him to the owners of the real property upon which said timber stood, nor were any representations made by plaintiff upon which defendants White relied, or were entitled to rely, which served as inducements to the defendants White to enter into said contract of February 15, 1934."

Examination of the testimony convinces us that the finding of the trial court is supported by the preponderance of the evidence.

Appellants cite many authorities to the effect that, in case of mutual mistake of fact, a contract may be modified, but these authorities are not in point here. On the contrary, the rule applied in the cases of *Stewart v. Larkin,* 74 Wash. 681, 134 Pac. 186, L. R. A. 1916 B, 1069; *Biel v. Tolsma,* 94 Wash. 104, 161 Pac. 1047; and *Sutton v. Peterson,* 193 Wash. 175, 74 P. (2d) 884, is applicable to the situation here presented.

The judgment entered by the trial court is clearly correct, and the same is affirmed.

BLAKE, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.