[No. 10498. Department One. December 13, 1912.]

MARGUERITE PAYNE, *Respondent*, v. LINDSEY COMPANY, *Appellant*.[1]

SALES—RESCISSION—FALSE REPRESENTATIONS. A sale of a cafeteria business will be rescinded for false representations to the effect that the business was being conducted at a profit, where it was the principal inducement leading to the sale and the purchaser had no means of ascertaining its truth.

SALES—RESCISSION—RESTORATION OF STATUS. A rescission of a sale of a cafeteria business will not be denied for the reason that the purchaser discontinued the business and cannot restore it in the same condition as when received, where it was tendered back in substantially the same condition and inability to make full restitution was not the fault of the purchaser.

APPEAL—PRESERVATION OF GROUNDS—OBJECTIONS. After a trial on the merits without objection, it cannot be urged on appeal that the action should have been tried at law as one for damages and not as one for equitable relief.

Appeal from a judgment of the superior court for King county, Albertson, J., entered April 9, 1912, upon findings in favor of the plaintiff, in an action for rescission. Affirmed.

[1]Reported in 128 Pac. 678.

*John E. Humphries, M. M. Minkler,* and *William A. Johnson,* for appellant.

*Wm. Brueggerhoff,* for respondent.

PARKER, J.—The plaintiff commenced this action in the superior court, seeking a judgment for rescission of a sale made to her by the defendant of a cafeteria business and the furniture used therein, and for recovery of the purchase price thereof paid by her to the defendant, upon the ground of false and fraudulent representations alleged to have been made to her by the president of the defendant corporation, inducing her to make the purchase. A trial in the superior court resulted in findings of fact made by the trial court, from which it concluded that the plaintiff was entitled to a judgment against the defendant in the sum of $750, the amount paid by her as the purchase price, upon her executing a bill of sale for the property to the defendant. A bill of sale was thereupon immediately executed by the plaintiff to the defendant, and placed in the hands of the clerk of the court, and judgment rendered in the plaintiff's favor accordingly. From this disposition of the cause, the defendant has appealed.

For a period of four months prior to September 12, 1910, appellant owned a cafeteria, situated in the neighborhood of the state university, in Seattle. Hiram Lindsey was then president of appellant corporation, and had the entire management and control of its business. During this period, appellant was not able to conduct its cafeteria as a paying business. Even according to the testimony of Lindsey, the business did not yield over $30 profit during this whole period of four months. Other evidence indicates that it was being run at a loss during this period. Early in September, Lindsey advertised the cafeteria and business for sale in a Seattle paper. Respondent called upon him in answer to this advertisement, and entered into negotiations looking to the purchase of the business. Respondent then had $750 in

money, which constituted practically everything of value she possessed. When she called upon Lindsey, they recognized each other as attendants of the same church though they did not know each other by name until then. She was a widow, inexperienced in the cafeteria business, and desired to invest her money in some small business in which she could make a living for herself and niece, a young girl who was dependent on her for support. Lindsey learned of these facts during their conversation prior to her agreeing to purchase the cafeteria. It is apparent that their church affiliation caused her to rely upon his statements as to the value and extent of the business more than she would otherwise have done. How she was influenced in this respect is shown by her testimony where, among other things, she says:

"I made the remark to him then: 'Mr. Lindsey, I am in good hands. The place will not be misrepresented to me because you are a member of the same church I go to.' He says, 'No, indeed, Sister, you will find no misrepresentation or no cheating by me, because I cannot afford to, either in a business way or in my church.' "

During their conversation, Lindsey told her, in substance, that the business was then a good paying business and making a profit, and that she could, during the coming nine months while the university was in session, make $2,000 in the business. This latter statement may be considered merely as an expression of opinion on the part of Lindsey, rather than a statement of an existing fact, but it nevertheless lent color to his statement as to the business then being profitable, and was manifestly intended by him to induce respondent to more firmly believe that the business was then in fact a good paying business. She had no other means of learning anything about the value or extent of the business and was by these statements induced to purchase the business, which was consummated the following day, September 12, when she paid appellant $750, and received a bill of sale for the property. On the following day, September 13, she

took possession and continued to conduct the business until December 9, when she was compelled to discontinue it and remove the furniture and fixtures, because of her inability to pay the rent. During this period, the business did not yield her any profit, but resulted in some considerable loss, though it is evident that she conducted it in substantially the same manner as appellant had conducted it before the sale to her. On November 28, having become convinced that the business could not be made profitable and that it was not a paying business at and prior to the time of the sale, such as Lindsey had represented it to be, she tendered it back to appellant and demanded the return of the $750 she had paid therefor. At that time the furniture and fixtures were in substantially the same condition as when she received them, and the business was still running the same as when she received it, though the daily receipts thereof had slightly decreased. On December 9, appellant not having acceded to her demand to take the business back and return her the purchase money, she discontinued the business and stored the furniture and fixtures and commenced this action.

The trial court rested its decision in respondent's favor upon the theory that Lindsey, appellant's president, falsely represented to her that the business was a paying business at the time of the sale, that she relied wholly upon such representations, and that under the circumstances she was justified in so doing, and was thereby induced to purchase the business. It is contended by counsel for appellant that the evidence does not support the court's findings of these facts. The testimony of Lindsey and respondent is in conflict touching his statement to her as to the business being profitable at and prior to the time of the sale. This involves little less than a question of credibility of witnesses who testified orally before the trial court, and ordinarily would furnish sufficient reason for our accepting the facts as found by the trial court in so far as they rest upon such testimony. Lindsey positively denies making the statements attributed

to him by respondent touching the profits of the business at and prior to the time of the sale; but it is manifest from all the circumstances shown that respondent was led to believe that she was acquiring an established business which was then being conducted with substantial profit, and that Lindsey's conversations with her during the negotiations were such as to induce her to believe that she was acquiring such a business, even though there may be some uncertainty as to the exact language used by him to her upon the subject of the profits of the business. The surrounding circumstances point strongly to the conclusion that Lindsey intended her to believe that she was acquiring a business which was then being conducted at a profit, and that she was induced to so believe by his statements then made to her. That the business was not in fact at that time conducted at a profit, and never had been by appellant during the four months previous, seems to us to be almost conclusively proven by the evidence. It seems equally clear to us that her belief that the business was at that time an established, profitable business was the principal inducement for making the purchase. Under all the circumstances, we think the learned trial court's conclusions find ample support both in fact and law. Our decisions in the following cases lend support to this view: *Lindsay v. Davidson*, 57 Wash. 517, 107 Pac. 514; *Johnson v. Ryan*, 62 Wash. 60, 112 Pac. 1114; *Blum v. Smith*, 66 Wash. 192, 119 Pac. 183.

Counsel for appellant invoke the general rule that equity will not grant rescission of a contract where the circumstances of the case are such that the parties cannot be placed in substantially the same situation they occupied when the contract was made. This rule is invoked upon the theory that, the business having been discontinued, it is not now possible to place the parties in the same position in which they were at the time the contract was made. If this condition had resulted from the fault of respondent, there might be some ground for this contention. We have seen that on

the 28th day of November, when she tendered back to appellant the cafeteria and business, it was in substantially the same condition as when she received it. Had appellant taken the property back and returned the purchase money at that time, the parties would have been in substantially the same situation as at the time of the sale. It is plain that thereafter she did all that was possible. to preserve the property and the business and prevent its deterioration in value. Under such circumstances we do not think this general rule can be successfully invoked here against respondent's claim of rescission. In the text of 24 Am. & Eng. Ency. Law (2d ed.), at page 623, the rule applicable to such cases is stated as follows:

"Where the party seeking relief has by his own acts rendered restoration of the subject-matter or consideration impossible, rescission will generally be denied. But where his inability to make restitution is not the result of his deliberate and wilful act, but occurs without any fault on his part, and justice can be done without requiring him to restore what he received, then rescission will be granted and the equities of the parties will be adjusted by the final decree."

Some contention is made that the complaint does not state a cause of action for equitable relief. The theory of this contention seems to be that the action should have been commenced and prosecuted as one at law, since its ultimate object was only the recovery of money. We find issue was joined by an answer which is in substance a general denial of respondent's allegations of fraud against appellant. The complaint was not demurred to, nor was there any demand for a jury trial. Clearly the subject-matter of the action was within the jurisdiction of the court. It was tried upon the merits before the court upon these issues without any objection on the part of appellant. The contention here made appears for the first time in this court. We think that it is without merit. It is of no consequence now whether the relief sought and granted is legal or equitable.

We are of the opinion that the learned trial court has correctly determined the rights of the parties, and that its judgment should be affirmed. It is so ordered.

Mount, C. J., Chadwick, Gose, and Crow, JJ., concur.