[No. 15517. Department One. December 30, 1919.]

# E. M. Gordon et al., Respondents, v. C. D. Hillman et al., Appellants.[1]

Husband and Wife (98) — Community Property — Descent to Heirs. On the death of a wife, intestate, the title to one-half the community real property vested immediately in her two minor sons.

Deeds (15-21)—Delivery—Deposit in Court. Where deeds of a husband and wife, tendered and filed in court, were, at all times pending an appeal by the adverse parties, subject to recall on abandonment of the controversy, they became ineffectual for any purpose as to the wife's interest upon her death before termination of the suit.

Husband and Wife (98.)—Community Property—Rights of Heirs —Judgment Against Husband and Wife—Effect. A judgment rescinding a trade and imposing reciprocal and concurrent obligations of reconveyance, with an alternative of a future money judgment, does not prevent community property from descending to the heirs upon death of one of the parties before performance.

Abatement and Revival (23)—Death of Party—Pending Final Judgment. A judgment rescinding a trade and imposing reciprocal and concurrent obligations of reconveyance, with an alternative of a future money judgment, is not in its practical effect a final judgment; and upon death of a party plaintiff more than one year prior to final judgment, the action abates, unless revived by substitution of her personal representative within one year, under Rem. Code, § 193.

Executors and Administrators (117, 120)—Sale of Real Property—Petition—Notice. The court cannot order an administrator to execute a deed of community property in compliance with a judgment without any administrator's petition or notice to minor heirs, and the deed executed by him individually and as administrator is ineffectual to pass title to one-half of the property, under Rem. Code, §§ 1498, 1499, 1502, and 1692.

Judgment—Compliance—Concurrent Obligations. Where a judgment to rescind a trade imposed upon the parties reciprocal and concurrent obligations as to reconveyance within a specified time, the failure of one party to reconvey relieves the other.

Judgment (111-1) — Vacation — Death of Party. Under Rem. Code, § 464, subd. 6, a judgment may be vacated by a direct attack in

[1]Reported in 186 Pac. 651.

the court where the judgment was rendered, on the ground of death of one of the parties before the judgment.

ABATEMENT AND REVIVAL (24) — DEATH — TIME FOR SUBSTITUTION. Under Rem. Code, § 193, the right of survivors to substitution on the death of a party is limited to one year.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 26, 1919, denying a petition to vacate a judgment, after a hearing before the court. Reversed.

*Carroll B. Graves*, for appellants.

*Byers & Byers* and *Aust & Terhune*, for respondents.

MITCHELL, J.—The history of the cause as to preceding litigation between these parties concerning the subject-matter still in controversy will be found in *Gordon v. Hillman*, 91 Wash. 490, 158 Pac. 96; *State ex rel. Gordon v. Smith*, 98 Wash. 100, 167 Pac. 91, 169 Pac. 468; *Gordon v. Hillman*, 102 Wash. 411, 173 Pac. 22; and *State ex rel. Hillman v. Superior Court*, 103 Wash. 288, 174 Pac. 14.

The original decree, which was affirmed in *Gordon v. Hillman*, 91 Wash. 490, 158 Pac. 96, while it fixes the plan by which the rights of the parties in relation to matters with which we are now immediately concerned should be adjusted, was not in its practical effect a final decree. After the remittitur in that case was filed in the lower court, that court attempted to finally determine those rights on January 5, 1918, and entered a judgment the validity of which is now directly attacked. On April 26, 1918, in the case of *Gordon v. Hillman*, 102 Wash. 411, 173 Pac. 22, the Hillmans filed their petitions in this court to recall the remittiturs in the cases of *Gordon v. Hillman*, 91 Wash. 490, 158 Pac. 96, and *State ex rel. Gordon v. Smith, supra*, and for an order vacating the judgment

in the original case, upon the ground that, after the
entry of that judgment and the perfecting of the ap-
peal therefrom, and prior to its affirmance by this
court, Mrs. Gordon, one of the plaintiffs, had died.
The petitions to recall the remittiturs were denied on
May 11, 1918; but, because of a showing therein made,
permission was granted Hillman and wife to proceed,
as they might be advised, in any form of action in law
or in equity for relief.

On the 27th day of May, 1918, the Hillmans filed a
petition in the superior court to vacate and set aside
the judgment of January 5, 1918. After personal
service of the summons and petition, counsel for Gor-
don appeared specially and objected to the court's
hearing the petition for want of jurisdiction, because,
as alleged, the petition was one to vacate what was in
legal effect a judgment of the supreme court, without
any permission therefrom to the superior court to en-
tertain such petition. The trial court favored the con-
tention made upon the special appearance and orally
announced it would not entertain the petition. There-
upon an application was filed in this court by the
Hillmans on June 24, 1918, for a writ of mandate to
compel a hearing on the petition in the superior court.
The application was granted on August 1, 1918, and
the decision is reported in *State ex rel. Hillman v.
Superior Court, supra.* In the application in that
case the relators, in order to advise this court of their
grievance presented in the superior court, set out in
full the petition of the Hillmans filed in the trial court
on May 27, 1918, to vacate the judgment of January 5,
1918, which is the same petition involved in the pres-
ent appeal.

In the decision of this court just referred to, im-
portant provisions of both the original and final judg-

ments are set out somewhat at length and need not
be noticed here, other than to observe that the original
decree provided for mutual conveyances and transfers
of real and personal properties within thirty days
from the judgment, or thirty days from the coming
down of the remittitur in the event of an appeal to
the supreme court, and further provided as against
the Hillmans that, in the event they did not reconvey
certain described real property, there should be money
judgments against them for amounts specified which
were declared to be the values of particular pieces of
real property; while the final judgment of January 5,
1918, declared that, at that date, the Gordons had
fully complied with all the terms of the original de-
cree, including the tendering into court of a special
warranty deed reconveying to the Hillmans, but that
the Hillmans had not reconveyed; whereupon, among
other things, a money judgment was entered against
them in the sum of $45,000, as provided in the alter-
native contained in the original decree. That opinion
holds that the judgment of January 5, 1918, was a
judgment of the superior court, and not of this court,
on the theory that the original judgment was not final
in some respects, but only provided the basis for final
judgment in those respects, including, among other
things, the determination by the superior court of the
sufficiency of the conveyances to be made by the re-
spective parties in the final adjustment of their rights
in compliance with the original decree. Thereafter,
in the opinion, noticing that the petition to vacate
the final judgment alleged fraud on the part of Gordon,
in that the conveyances tendered by him in court on
January 5, 1918, were insufficient, thus inducing the
court to erroneously enter the judgment now sought
to be set aside, we said:

"Manifestly, there could be and was presented upon that hearing the question of the sufficiency of such conveyances, which the court was called upon to decide, and as to which fraud could be practiced upon the court, inducing a wrong decision; furnishing relators cause for relief such as they in their petition and their application to this court are seeking."

And we concluded therein it was the duty of the superior court to entertain the petition and directed it to proceed to a final determination thereof. Afterwards issues were made up, the cause was heard, and the trial court entered a judgment denying the petition to vacate the final judgment, and the Hillmans have appealed.

The trial on the petition to vacate occurred in April, 1919. It appears from the evidence that Mrs. Gordon, who was living with her husband when they acquired the property from the Hillmans, died on August 22, 1914, during the pendency of the appeal from the original judgment. She left surviving her two minor sons, Donald P. and Douglas G. Gordon, one of whom, Donald P., attained the age of majority on March 2, 1918, while the other is yet a minor. Mr. Gordon was appointed and qualified as administrator of his wife's estate on September 17, 1914, and there is no showing as to the distribution of property or the closing of the administration of the estate. On July 23, 1913, prior and preparatory to the commencement of the original action, Gordon and wife executed and tendered to the Hillmans three several instruments and transfers, offering to reconvey all the real and personal property they had received in the trade, and demanded reconveyance from the Hillmans of property they had received. The tender was kept good by the filing of the instruments in court upon the commencement of the original suit a few days thereafter. Those three

instruments remained in the registry of the court. The original judgment was entered on February 28, 1914, and the remittitur from this court, showing an affirmance of that judgment, was filed in the superior court on April 2, 1917.

On May 2, 1917, Gordon, as administrator of his wife's estate, filed a petition in the probate department of the superior court for an order authorizing him as such administrator to make conveyances and transfers of real and personal property back to the Hillmans, and immediately, without any order to show cause or notice of any kind, and without any appearance or consent of the minors or either of them, the superior court made and entered an order purporting to grant authority as requested in the administrator's petition. On the same day Gordon, individually and as administrator, executed a special warranty deed to the real property theretofore acquired from the Hillmans, designating therein Hillman and wife as grantees; and also Gordon, individually, executed a bill of sale of all the personal property theretofore received from the Hillmans, designating Hillman and wife as vendees; and on that day, with one of his attorneys, tendered the two instruments to one of the then attorneys for the Hillmans, claiming they were in compliance with the terms of the affirmed decree or decision in the cause between them. The instruments were initialed on the margin for identification by the Hillmans' attorney, rejected and handed back to Gordon and his attorney, who on the same day deposited them with the clerk of the court, who, it seems, placed them in an envelope already containing the three deeds dated July 23, 1913.

On the other hand, on September 30, 1917, Hillman and wife, as grantors, executed two special warranty deeds covering the real property and a bill of sale of

the personal property they had received from the Gordons, in each of which E. M. Gordon, individually and as administrator of his wife's estate, is named as grantee, and on October 17, 1917, filed them and had them marked as filed by the clerk of the court in the original case. At the present trial, the judge in whose department the cause had been pending, and who signed the final judgment of January 5, 1918, testified that, prior to the date of the final judgment, one of the attorneys for the Hillmans had informed him that the Hillmans had executed deeds in compliance with the original decree and that they were in the registry of the court. It appears that, on January 5, 1918, one of the attorneys for respondents, having in his possession the three instruments dated July 23, 1913, executed by Gordon and wife, and two other instruments, one executed by Gordon individually and as administrator, and the other by him individually on May 2, 1917, all running to Hillman and wife, appeared in court and stated he had deeds which complied with the order of the court and that he wanted the judgment he was entitled to against the Hillmans. The trial judge, without examining the deeds, assumed they were sufficient to protect appellants and signed and entered the judgment now in question. The five instruments were returned and filed in the clerk's office. There is a dispute in the evidence as to whether or not appellants' then attorneys actually saw and examined the deeds used in obtaining the final judgment for more than ninety days and until just a few days before they filed their petition to vacate the judgment, although they had ample opportunity to do so. However, the dispute is unimportant, as we view the case. It further appears that, after the present petition to vacate the final judgment was filed, Gordon, as guardian of the person and estate of Douglas D. Gordon,

a minor, made and filed in the probate department of the superior court his petition for an order authorizing him to convey to the Hillmans by special warranty deed the lands theretofore conveyed by them to the Gordons, and that immediately, without any order to show cause or notice of any kind, the superior court made and entered an order purporting to grant such authority; and on July 22, 1918, such a deed was executed by Gordon, individually and as guardian of Douglas D. Gordon, to the Hillmans. This deed was also signed by Donald P. Gordon, of age at that time. The deed was not delivered, but was offered and received in evidence at the present trial.

The purpose of the original action was the rescission of mutual conveyances of real and personal property. The plaintiffs therein prevailed over the defendants and obtained a judgment directing restoration, each to the other, of the property theretofore conveyed, and to preserve certain equities in favor of the respective parties. Conscious of the rule that a deed procured by fraud vests title in the grantee, the judgment properly imposed upon the parties the reciprocal and concurrent obligations of reconveyances within a specified time; in the alternative, however, in part as to the defendants, carrying the possibility of a future money judgment against them. The property acquired by the Gordons became community property, and upon the death of Mrs. Gordon, intestate, on August 22, 1914, the title to one-half of the real property vested immediately in her two minor sons. Rem. Code, §§ 1342, 1366. The three deeds of reconveyance of Mr. and Mrs. Gordon, tendered to the Hillmans prior to the original suit, became wholly ineffectual, upon her death, as to one-half of the community real property, because they had been tendered, and the tender kept good by deposit in court in connection with

their suit, upon condition that the Hillmans reconvey or be compelled to do so, and because she died while the Hillmans, under the specific terms of the original decree and their right of appeal and supersedeas, were still protesting against the enforcement of the condition upon which the tender was made, during all of which time the Gordons were entitled to abandon the controversy and recall the deeds. The deed executed by Gordon, individually and as administrator of his wife's estate, to the Hillmans, and tendered on May 2, 1917, which was rejected by the Hillmans' attorney, was insufficient as to the title to one-half of the real property. Such must be the case, whether it be considered an attempt on the part of the administrator to make a public or private sale, since there was no show cause order made upon the administrator's petition to sell, and consequently no notice of a hearing published or personally served on the parties interested in the estate, including the minor heirs, nor any appointment of or appearance by a guardian *ad litem* for the minor heirs, as required by §§ 1498, 1499, 1502 and 1692, Rem. Code.

With these deeds in his possession, but without advising the court that such were the deeds referred to, counsel for Gordon represented to the court that he had sufficient deeds to comply with the original decree on Gordon's behalf and he wanted his alternative judgment against the Hillmans. The court relied on the representation and entered a judgment, erroneously finding that the Gordons had complied with the original judgment and that the Hillmans had not, and entered a money judgment against the Hillmans for about $45,000, subject to immediate execution. The matter of actual or positive fraud is not involved. There is not a vestige of proof to show that counsel, or any of them, were actuated by dishonest motives.

They still contend, erroneously we say, with perfect candor, as they did then: (a) that the obligations imposed by the original judgment on the Gordons, even if left undone, would in no way relieve the Hillmans from a strict compliance on their part to convey or suffer a money judgment; (b) that no interest in the real property descended to the minor heirs upon the death of Mrs. Gordon, because of the original judgment prior to her death; (c) that the Gordon deeds of July 23, 1913, were delivered, because tendered and brought into court; and (d) that those deeds, together with the one of May 2, 1917, by Gordon, individually and as administrator, were all that was necessary to convey title. Nor do we think the so-called guardian's deed of July 22, 1918, in any way relieved the situation, it being ineffective to convey any interest or estate.

Further, this proceeding is also a direct attack upon the final judgment of January 5, 1918, and the first direct attack ever made, and the only one ever made in the superior court. As already noticed, and as was stated in *State ex rel. Hillman v. Superior Court, supra,* the original judgment was not in its practical effect a final judgment. It imposed reciprocal obligations to be performed in the future, for the accomplishment of which Mrs. Gordon was a necessary party. She died more than a year prior to the final judgment, and neither her representative nor successors in interest have ever been substituted to continue the action. At common law, all actions pending abated upon the death of a necessary party. If the cause of action was one that did not survive, death finally ended the action; but if a cause of action was one that did survive, a new action by or against the personal representative of the deceased party was necessary to prose-

cute the remedy. Touching the latter class of actions, our statute, Rem. Code, § 193, provides as follows:

"No action shall abate by the death, marriage, or other disability of the party, or by the transfer of any interest therein, if the cause of action survive or continue; but the court may at any time within one year thereafter, on motion, allow.the action to be continued by or against his representatives or successors in interest."

Which, of course, means if there is no substitution within one year the action does abate.

In the case of *Overlock v. Shinn*, 28 Wash. 205, 68 Pac. 436, this court considered a situation wherein a party commenced an action of the kind that survives, and during the pendency of the action the plaintiff died. Nothing further was done in the case for more than a year, when a new action was started on the same cause by the administrator of the deceased person, whereupon the defendant affirmatively pleaded in bar the commencement of the former suit, the service of summons and the answer of defendant therein, and the death of the plaintiff in the first suit, that no representative or successor in interest of the deceased person continued that action, and that such former action was still pending and undetermined. It was decided that a demurrer to the special plea was properly sustained. In the opinion, upon noticing the contentions that the first clause of the statute was mandatory and provided against abatement in the case of death of one of the parties if the cause of action survived; that the latter clause, permitting the action to be continued by the representative, is permissive only, and whether it is so continued or not, it is still an action pending, and therefore a bar to another action on the same cause until the former action is disposed of, it was held otherwise, this court saying:

"The statute conferring the right must, therefore, be read as a whole, and effect be given, if possible, to all of its provisions. In the statute before us, while it states in the first clause, as the appellant says, that no action shall abate by the death of a party, it is plain that the second clause is a limitation upon the first. By this second clause the right of the representative to continue the action is limited to one year."

And further in the same case said:

"It was intended to be remedial; to promote justice, not to operate as a denial thereof; and a proper construction of its provisions authorizes the conclusion that an action after the death of a party abates if no application is made to continue it within one year after the death of such party."

That the rule concerning the abatement of actions is applicable to final judgments made after interlocutory judgments, is supported by the authorities collected in note V-g, *Kager v. Vickery,* 49 L. R. A. 166.

To avail themselves of the right to have set aside the final judgment entered after the death of Mrs. Gordon, appellants have proceeded directly in the cause and court where the error occurred, according to subdivision 6 of § 464, Rem. Code, which provides for vacating a judgment: "For the death of one of the parties before the judgment in the action; . . ." Such a judgment, whether it be considered void or voidable, is, according to general authority also, subject to direct attack. 15 R. C. L., p. 703, § 155; *Claflin v. Dunne,* 129 Ill. 241, 21 N. E. 834, 16 Am. St. 263; *Seeley v. Johnson,* 61 Kan. 337, 59 Pac. 631, 78 Am. St. 314; *Cochrane v. Parker,* 12 Colo. App. 169, 54 Pac. 1027; *Alvis v. Saunders,* 113 Va. 208, 74 S. E. 153.

On the contrary, it is contended by respondents that the judgment complained of is "valid in every way," because this court, in the case of *Gordon v. Hillman,*

102 Wash. 411, said: "the further proceedings in this court thereafter were not void nor voidable, and were not even erroneous," and because, in the case of *State ex rel. Hillman v. Superior Court, supra,* this court, in effect, said the original judgment was not in its practical effect a final decree, and that the subsequent proceedings were only carrying out the decree already existent. But we do not so understand. In the first place, both of these were original cases in this court, and the statute, § 464, Rem. Code, provides that proceedings to vacate a judgment must be commenced in the superior court where the judgment was rendered. And, besides, what was decided in this regard in the case of *Gordon v. Hillman,* 102 Wash. 411, was that the original appeal to this court did not abate by the death of Mrs. Gordon, and we refused to recall the remittitur; while in the other case it was held that the trial court was authorized to proceed to judgment. But it was not said that the trial court could proceed to a proper judgment in the absence of the representative or successors in interest of Mrs. Gordon.

It may be further noticed that, in *Gordon v. Hillman,* 102 Wash. 411, it was held that the death of Mrs. Gordon, after appeal taken in the original suit, did not affect the appeal, because of the statute allowing either party to suggest the death and to have the substitution of a representative at any time during the appeal. Not so, however, at the date of the final judgment, January 5, 1918; for at that time—indeed, prior to the going down of the remittitur in the Hillmans' appeal in the original action—Mrs. Gordon had been dead more than a year, and hence the right of any of the surviving parties to the action to suggest the substitution of her representative or successors in interest had expired according to the terms of the second clause of § 193, Rem. Code.

Respondents contend there have been certain ratifications by appellants of the judgment. All of the evidence relied on has been examined and we are satisfied the claim is without merit. It involves matters of fact a detail of which can serve no useful purpose.

Reversed, with directions to the trial court to set aside the judgment of January 5, 1918.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.