[No. 18010.   Department One.   October 8, 1923.]

## C. D. HILLMAN et al., Appellants, v. ELDEN M. GORDON et al., Respondents.

## ELDEN M. GORDON et al., Respondents, v. C. D. HILLMAN et al., Appellants.[1]

APPEAL (443)—REVIEW—HARMLESS ERROR—REFUSING TO REQUIRE AN ELECTION. In an equitable action tried to the court, error cannot be predicated upon the failure to require the plaintiff to make an election.

JUDGMENT (13, 166)—FORMAL REQUISITES—CONSTRUCTION—FINALITY. A decree adjudging that fraud had been practiced, awarding a rescission, and fixing the amount of the alternative money judgment, is a final decree notwithstanding that an additional order was contemplated for the purpose of appointing a commissioner to convey the title.

ABATEMENT AND REVIVAL (22)—DEATH OF PARTY—AFTER FINAL JUDGMENT. The death of a party plaintiff, after entry of a final judgment, does not abate the action, or prevent the entry of an order for the appointment of a commissioner to convey the title pursuant to the judgment.

JUDGMENT (263)—EQUITY (14)—PROCEEDINGS TO ENFORCE JUDGMENT—ACTION ON INEFFECTIVE JUDGMENT. One having a valid final judgment for a rescission which cannot be enforced or made effective in any proceeding in the cause, may begin an equitable action to enforce the judgment without relitigating the issues decided.

JUDGMENT (265)—REVIVAL—LIMITATIONS—TIME WHEN BEGINS TO RUN. Rem. Comp. Stat., § 460, providing that no suit or action shall be had on any judgment after six years from the entry of the original judgment, does not bar an action within six years after the date of the decree, where there was an appeal and the judgment was not affirmed until less than six months before the commencement of the action.

SAME (265)—REVIVAL—SCOPE OF ACT. Such statute does not bar an action in equity for the purpose of giving force and effect to a judgment of rescission, which was not an action to revive or continue the lien of a judgment.

TENDER (4)—SUFFICIENCY—TENDER OF DEED. Where, in an action for a rescission, sufficient tenders of deeds were originally made,

[1]Reported in 219 Pac. 46.

their insufficiency cannot be asserted on the ground that they later became insufficient through the death of one of the parties making the same.

JUDGMENT (131)—VACATION—EFFECT UPON DEED MADE PURSUANT TO DECREE. The confirmation of a deed made under order of court cannot be objected to on the ground that its confirmation in a prior proceeding became a nullity by reason of the vacation of the judgment in such proceeding, all of which may be eliminated as superfluous.

VENDOR AND PURCHASER (67)—RESCISSION BY VENDEE—INABILITY TO RESTORE STATUS QUO. The rescission of a real estate deal cannot be objected to on the ground that the defendant cannot be put in *status quo* because many of the notes given have become outlawed during the course of the litigation, where plaintiffs repudiated the delay long before any such loss, which was sustained without their fault.

SAME (74)—RESCISSION BY VENDEE—EXTENT OF RELIEF. In an action for a rescission in which the property was lost during the course of the litigation through the default of the plaintiffs upon a mortgage upon the property, which was foreclosed; and in which there was no duty on the part of the defendant to protect against loss the property deeded by them, it is error to award an alternative money judgment against the defendant for failure to reconvey.

Appeal from a judgment of the superior court for King county, Hall, J., entered September 12, 1922, upon findings in favor of the defendants upon their cross-complaint to enforce a judgment, in an action to vacate a commissioner's deed and quiet title, tried to the court. Affirmed in part and reversed in part.

*Carroll B. Graves,* for appellants.

*Stratton & Kane,* for respondents Gordon.

*Hartman & Hartman,* for respondent Calvin Philips & Company.

BRIDGES, J.—This litigation has been in the courts ten years, and has been before us five or six times; changes of facts and conditions during that time have caused additional complications. If this opinion is to be intelligible to anyone not intimately acquainted with

the case, it will be necessary to give a somewhat full statement of the facts and our prior decisions. We will refer to the appellants as the Hillmans, and to the respondents (other than Calvin Philips & Company) as the Gordons.

During the early history of the litigation, Mrs. Gordon died, leaving her husband and two minor children. On July 8, 1913, the Gordons and the Hillmans consummated a prior agreement for the exchange of properties by the Gordons conveying to the Hillmans lot 12, block 26, D. T. Denny's 4th addition to the city of Seattle; which we will hereinafter call the Strathmore Apartments, and which was encumbered by a mortgage securing about $25,000; also the west half of lots 9 and 12, block 37, A. A. Denny's addition to Seattle, and lots 1 to 18, inclusive, block 4, Schaffer & Moncrieff's Olympic View addition to Seattle, which last two described tracts were encumbered by a mortgage of some $28,000; also, the furniture in the Strathmore property. On the same day, the Hillmans gave to the Gordons their deed covering a large number of town lots located in Seattle and elsewhere, and some logged and other lands in Thurston and Mason counties, and also assigned to them various notes, a part of which were secured by mortgage.

A short time after the consummation of the deal, the Gordons conceived that they had been defrauded by the Hillmans, and instituted suit against them for rescission, tendering them conveyances to all of the property they had conveyed, except the Gorham note for $2,000, (the value of which was by the court later found to be $1,000), demanding from them a reconveyance of the property which they had received in the deal. The Hillmans refused the rescission and to reconvey, and

the Gordons' tenders were kept good by filing with the clerk of the court.

The case was finally tried, and on February 27, 1914, a decree was entered in favor of the Gordons. It found the fraud, adjudged the rescission, and further provided that, within thirty days from its entry, the Hillmans reconvey to the Gordons all the real and personal property they had received; that, if they failed to make the conveyance as to the west half of lots 9 and 12, block 37, A. A. Denny's addition, the Gordons should have a personal judgment against them for $37,000; if they failed to reconvey lots 1 to 18, block 4, Schaffer & Moncrieff's Olympic View addition, a judgment for $5,000 should run against them in favor of the Gordons; if they failed to reconvey the furniture in the Strathmore Apartments, the Gordons should have a judgment against them for $2,500. The decree further provided that, within thirty days from its entry, "and forthwith upon" reconveyance by the Hillmans, the Gordons should reconvey to the Hillmans all the property they had received by the exchange of deeds, except the Gorham note, the value of which was fixed at the sum of $1,000, which sum was to be paid in lieu of that note; that the Gordons also pay the Hillmans $4,369.01, that amount representing sums which the Hillmans expended on the property conveyed to them; that all the conveyances should be by instruments of special warranty; that, if any of the parties failed to make the conveyances, then a commissioner should be appointed to make them.

It will be noticed that the decree makes no alternate provision for money judgment as to the Strathmore property. We will hereinafter refer to this decree as the original decree. The Hillmans appealed to this

court, and the decree was affirmed by us in 1915. *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96.

Subsequently the same matter came before us on a writ of mandamus and we, in substance, reiterated our conclusions in 91 Wash. 490, and directed that the original decree be carried into effect. *State ex rel. Gordon v Smith,* 98 Wash. 100, 167 Pac. 91, 169 Pac. 468.

After the affirmance of the decree by this court, and on January 5, 1918, the trial court made another decree which, after reciting that the Gordons had paid into court the sums which the original decree required them to pay, and that they had tendered into court deeds as required by that decree, and that the Hillmans had failed to reconvey to the Gordons, appointed a commissioner, commanding him to convey to E. M. Gordon, individually and as administrator of the estate of his wife, the Strathmore Apartment property; it being made to appear to the court that Mrs. Gordon had died while the appeal from the original decree was pending in this court. It also gave the Gordons a judgment against the Hillmans for $37,000 on account of the real estate in the A. A. Denny addition, and $5,000 on account of the lots in the Olympic View addition, and $2,500 for the furniture in the Strathmore Apartments, making a total of $44,500.

Although Mrs. Gordon had died after the making of the original, but before the making of the second, decree, her personal representatives were not substituted, and have not since been substituted, in the litigation.

After the entry of the second decree, the Hillmans again brought the case to this court on matters which are not particularly pertinent to this appeal. *Gordon v. Hillman,* 102 Wash. 411, 173 Pac. 22.

The matter was again before us in *State ex rel. Hill-*

*man v. Superior Court,* 103 Wash. 288, 174 Pac. 14, concerning matters which are not very material to this appeal.

After the entry of the second decree, the Hillmans presented a petition to the trial court to vacate and set aside that judgment. That court refused so to do and the Hillmans again appealed. *Gordon v. Hillman,* 109 Wash. 223, 186 Pac. 651. We there held that the original tender of deeds by Mr. and Mrs. Gordon had become ineffectual because of her death, inasmuch as her undivided one-half of the property descended at once to her heirs. We further held that, because of Mrs. Gordon's death and the failure within one year to substitute her personal representatives, the original rescission action had abated before the entry of the second judgment and that no further proceedings could be taken in that action, and directed the lower court to vacate its second decree. This it did. However, before the second decree was vacated, the commissioner appointed thereby had conveyed the Strathmore property to the Gordons by virtue of its terms.

After the vacation of the second decree—and in March, 1920—the Hillmans commenced this action for the purpose of cancelling the commissioner's deed to the Strathmore property and to quiet the title thereto in themselves. The Gordons, after making answer, cross-complained by setting up in detail all of the facts contained in the original complaint for rescission, and also set up the commencement of the original rescission case, the original decree therein, its affirmance by us, the making and vacating of the second decree, the death of Mrs. Gordon, the failure to substitute her personal representatives and the consequent abatement of that action, the final closing of the estate of Mrs. Gordon, the distribution of her half interest in all of the

property to her two sons, and the tender by them of new and sufficient deeds of conveyance to the Hillmans, covering the property which had been originally received from the Hillmans. Their cross-complaint prayed that the Hillmans be required to deed the property they had received from the Gordons, or that they (the Gordons) be given a judgment against the Hillmans for the value of the property in the sum of $126,-000. Subsequently the Gordons commenced a separate suit against the Hillmans, alleging in substance all the things they had set out in their cross-complaint and seeking the same relief. Inasmuch as practically the same questions and facts were involved in the two cases, they were consolidated for trial and appeal.

In their suit to quiet title, the Hillmans made Calvin Philips & Company defendants. The latter answered, alleging that, when the Hillmans got the Strathmore property, there was a mortgage on it for something like $25,000, and that, after the title to the property had again vested in the Gordons by virtue of the commissioner's deeds, pursuant to the vacated second decree, they had made a loan to the Gordons in the sum of about $25,000, for the express purpose of discharging the original mortgage on that property, and that their loan was secured by a new mortgage on the same property, given by the Gordons.

On September 7, 1922, the trial court entered a decree in the consolidated cases, adjudging that the Gordons were the owners and entitled to possession of the Strathmore apartment property, and that, within thirty days from the date of the decree, the Hillmans should reconvey such property to the Gordons, subject to the Philips & Company mortgage, and also the furniture therein. It ratified the commissioner's deed to the Strathmore property and ordered that, if the Hill-

mans neglected or refused to make such conveyances within thirty days from the date of the decree, a person appointed as commissioner should make the conveyance. It was further adjudged that, upon such conveyances being made, either by the Hillmans or the commissioner, the former should be entitled to receive from the clerk of court the deeds, bills of sale, assignments, notes, mortgages, etc., covering the property which the Gordons had originally obtained from them. It also established the Calvin Philips & Company's mortgage as a valid lien and quieted the title to the Strathmore property in the Gordons. It was also decreed that the Gordons should have a judgment against the Hillmans for $42,000, with interest from January 5, 1918, less a credit of $7,771.66, which credit was made up of $1,000, the value of a note and mortgage which the Gordons were unable to return to the Hillmans, and $4,369.01, expended by the Hillmans on the Strathmore property, together with interest on those sums, thus leaving a net judgment in favor of the Gordons for $45,945.34. Although this decree does not state why the Gordons are given a judgment for $42,000 and interest, less certain offsets, since this action is based on the original decree in the rescission case, we may look to that instrument for explanation. It directed that, if the Hillmans did not reconvey the property (other than the Strathmore apartments) they had originally received from the Gordons, the latter should have personal judgment for $44,500. The $42,000 mentioned in the decree from which this appeal is taken is the amount of the former judgment less the $2,500 for the furniture, as provided in the original decree. Since it appears in this case that the Gordons now have possession of that furniture, it is quite plain that the judgment here given is that directed in the original decree,

less the value of the furniture. From this decree, the Hillmans have again appealed to this court.

Regrettably long as the foregoing statement is, it seems there is no way to avoid it. We proceed to a discussion of the legal points involved in this appeal.

(1) The Hillmans demurred to both the complaint and the cross-complaint in this consolidated action and now insist that the demurrers should have been sustained. What we will have to say on the other points involved will be sufficient to dispose of this matter.

(2) Before the trial of the case, the Hillmans asked the court to require the Gordons to elect whether their present action was based upon the original fraud or upon the original decree in the rescission case. If this had been a law case, it is possible that the court should have required an election, but being one in equity, the court ultimately will consider only such facts and pleadings as the circumstances seem to require and will cast aside the remainder as superfluous. Under such circumstances, if the trial court erred in refusing to require the Gordons to elect, it was an error without prejudice to the Hillmans, and reversal, of course, cannot be based thereon.

(3) We will for the present assume that this action is based on the original decree in the original rescission action. · So considered, the Hillmans contend that it cannot be maintained because the original decree was not a final judgment and, the case having abated upon the death of Mrs. Gordon and the failure to substitute her personal representative, ''it was not possible to proceed to a final judgment; the action not having been terminated by a final judgment, and having abated, all proceedings, orders and interlocutory judgments failed, of course, with the action itself''; that an action on a judgment cannot be maintained unless

that judgment be final. We think the original decree was a final judgment, determining and defining the rights of the parties to the action. It is true that it contemplated that an additional order on the judgment would be later made for the purpose of appointing a commissioner to transfer the title to the Strathmore property if the Hillmans failed to make conveyances within a definite time, and to give a money judgment as provided by the original decree in the event the Hillmans failed to reconvey the remainder of the property. But the original decree adjudged the fraud practiced by the Hillmans, awarded a rescission, directed reconveyances to be made, fixed the amount of the money judgment in the event one became necessary, and thus adjudged the rights of the parties in the controversy.

We must have treated this decree as a final judgment in order to have entertained the appeal in *Gordon v. Hillman*, 91 Wash. 490, 158 Pac. 96, where we discussed the merits of the case and affirmed the judgment. It is true that, in the case of *State ex rel. Hillman v. Superior Court,* 103 Wash. 288, 174 Pac. 14, speaking of this original decree, we said that, ''while it determined the rights of the parties, or rather the basis on which the rights of the parties should be adjusted,'' it ''was not in its practical effect a final decree, leaving nothing further to be determined. .. . .'' And in *Gordon v. Hillman,* 109 Wash. 223, speaking of this decree, we said that, ''while it fixes the principle by which the rights of the parties in relation to the matters with which we are now immediately concerned should be adjusted,'' it ''was not in its practical effect a final decree''; yet we also said, in *State ex rel. Gordon v. Smith,* 98 Wash. 100, 167 Pac. 91, 169 Pac. 468, that, ''The judgment of the court in the original action definitely fixed and determined those rights. Any subse-

quent orders or adjudications in the cause itself must be confined to such as are necessary to carry the judgment into execution.''

In a very restricted or technical sense, it was not a final judgment because it left certain other things to be done, but in the sense that it disposed of the rights of the parties to the action it was final. A judgment cannot be said not to be final simply because, as here, it contemplates the making of a subsequent order or judgment for the purpose of carrying it into effect, and the decree entered in this case was nothing more or less than an effort on the part of the court to put into effect its own previous judgment rendered in the rescission case. Since Mrs. Gordon did not die and the action did not abate until after the final judgment had been entered, the abatement could not in any sense affect that judgment, but would simply have the result of leaving the case where it stood at that time so that no further action could be had in that case for the enforcement of the judgment. It stands today in full force and effect, but, under our previous decisions, it cannot be made effectual in the original proceeding because that action has abated.

(4) We have, then, the rather unusual situation of a valid final judgment which cannot be enforced or made effective by any proceeding in the cause wherein it was rendered. Such being the case, is the judgment creditor without remedy? Must he lose the fruits of the litigation which gave him the judgment? Is he forced, because of the unusual situation, to commence a new action on the original fraud and re-litigate the identical questions which were in dispute in the original action and which were there adjudged? Our answer is no, to all of these questions. The law is not so impotent, nor does it require such circuitous action. Hav-

ing a valid final judgment in their favor and being unable to enforce it in the original action, the Gordons may come into a court of equity by a separate proceeding for the express purpose of enforcing it, and that, after all has been said and done, is exactly what has been undertaken in this cause. Such a proceeding is not only based on sound reasoning and good sense but is supported by authority. Mr. Story, in his work on Equity Pleadings (10th ed.), § 338, says:

". . . a supplemental bill may also be filed, as well after, as before a decree; and the bill, if after a decree, may be, either in aid of the decree, that it may be carried fully into execution; or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defence made to it; or to bring forward parties before the court; or it may be used to impeach the decree, which is the peculiar case of a supplemental bill, in the nature of a bill of review, of which we shall treat hereafter. But where a supplemental bill is brought in aid of a decree, it is merely to carry out and give fuller effect to that decree, and not to obtain relief of a different kind on a different principle; the latter being the province of a supplementary bill in the nature of a bill of review, which cannot be filed without the leave of the court."

In 10 R. C. L. 567, it is stated:

"When an irreversible, unreviewable, and unimpeachable decree has been finally obtained, numerous contingencies may yet arise to prevent the party who is entitled to enjoy the benefit of the decree from obtaining the fruits of it; and under certain conditions, such a party is entitled to maintain a bill to carry the decree into effect. Such a bill is a supplemental bill, founded on new matter arising after the entry of the decree. The power of the court of chancery to entertain a bill to enforce and carry into effect a prior decree is one of its original and undoubted powers, and it is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judg-

ments, which remain unreversed, when the subject-matter and the parties are the same in both proceedings.''

To the same effect see 16 Cyc. 363; 21 C. J. 695; *Root v. Woolworth,* 150 U. S. 401. The principles laid down by the last cited case are peculiarly applicable here. There one Morton brought suit against Root to quiet title to certain valuable lands. Judgment went in his favor. He then conveyed to Woolworth. Thereafter Root went into possession of the property, laid claim to it on various grounds, and refused to abide by the original judgment. Woolworth brought a separate action in equity to carry into effect the original decree in the case of *Morton v. Root,* Fed. Cas. No. 9,866. It was held that the lower court properly obtained jurisdiction and had power to enter a supplemental judgment, ordering Root to leave the property and directing the marshal to eject him, and decreeing that he had no rights whatsoever in the property. In support of its opinion, the court quotes from Story's Equity Pleadings (10th ed.), § 429, as follows:

''Sometimes such a bill is exhibited by a person who was not a party; or who does not claim under any party to the original decree; but who claims in a similar interest; or who is unable to obtain the determination of his own rights, till the decree is carried into execution. Or, it may be brought by or against any person, claiming as assignee of a party to the decree.''

Our conclusion, then, is that the Gordons had a right to maintain this separate proceeding, not for the revival of, but for the purpose of enforcing the original decree.

(5) The Hillmans seem to contend here that, since the original decree was made on February 27, 1914, it cannot be revived, under § 460, Rem. Comp. Stat. [P. C. § 8164], which reads as follows:

"No suit, action, or other proceeding shall ever be had on any judgment rendered in the State of Washington, by which the lien or duration of such judgment, claim or demand, shall be extended or continued in force for any greater or longer period than six years from the date of the entry of the original judgment."

This statute does not bar the present proceeding by the Gordons, for two reasons; first, because the original decree, although made in February, 1914, was not affirmed by this court until July 16, 1915; and, second, because this is not an action on or to revive or to continue the lien of a judgment, but a proceeding solely for the purpose of giving that judgment effect. In our opinion, no statute of limitation is involved in this case.

(6) Appellants further contend that if this be an action based on the original decree (as we here hold), then, it cannot be maintained, because the tenders made by the Gordons are insufficient. We cannot accept this view. The tenders as originally made were manifestly sufficient. After the original judgment was rendered, they became insufficient under the ruling of the court, merely because of Mrs. Gordon's death, and the descent of the property to her heirs. That situation, however, could not affect the original judgment. Before the commencement of this suit, the Gordons made additional tenders which were and are sufficient, and the original decree can be enforced in this action, based upon the tenders made in this action.

(7) It will be remembered that, in January, 1918, the trial court made a supplemental judgment carrying into effect the original decree, and that we caused that supplemental judgment to be vacated because of the previous abatement of the action. Under this supplemental judgment, the court appointed a commissioner to convey the Strathmore property to the Gor-

dons. It is now complained that the court erred in this case in confirming that deed. We think that portion of the present judgment is a nullity. All proceedings under the supplemental judgment, including the appointment of a commissioner and his deed of the property, must have fallen with the vacation of that judgment. But the confirmation here made of that deed is not an essential part of the judgment under review and may be eliminated as superfluous.

(8) Appellants further contend that there cannot now be any rescission of the original deal between the Gordons and the Hillmans, or any action to enforce the original decree, because the Gordons are unable at this time to put the Hillmans in *statu quo*, and return to them what they have received. It is asserted in appellant's briefs that, between the commencement of the original and this action, many of the notes and mortgages which the Hillmans transferred to the Gordons have become outlawed and are unenforcible, and that much of the real estate transferred to the Gordons has been lost because it has been sold on account of delinquent taxes. If such be the situation, neither the fault nor the loss can justly be laid to the Gordons. Such loss occurred long after the Gordons repudiated the original deal, made proper tenders of transfer to the Hillmans, and long after the original decree was entered. The general rule is, that one seeking to rescind must return what he received. But in proper instances this rule is relaxed. If, because of his own fault, he cannot make return, then the rescission will not be granted—at least, without making him pay the value of that which he cannot return. But if the property be lost without his fault, then the failure to return will not defeat rescission. 24 Am. & Eng. Ency. Law (2d ed.), 623; *Payne v. Lindsey,* 71 Wash. 293, 128 Pac. 678;

*Felt v. Bell,* 205 Ill. 213, 68 N. E. 794. We are unable to see, under the circumstances existing here, that any duty rested upon the Gordons to take effective action to protect this property, and if there has been a loss for the reasons stated it must fall upon the Hillmans.

(9) We come now to discuss the money judgment against the Hillmans. When the Gordons originally deeded to them the west one-half of lots 9 and 12, block 37, A. A. Denny's addition to Seattle, and lots 1 to 18, both inclusive, block 4, Schaffer & Moncrieff's Olympic View Addition to Seattle, there was a mortgage on the property, amounting to some $25,000. When the original decree was made, this property was still covered by the mortgage, and it was possible for the Hillmans to reconvey. It provided that the Hillmans should reconvey the property to the Gordons, and if they failed so to do, a judgment for $42,000 should run against them in favor of the Gordons. Manifestly, the trial court, at that time, must have found that sum to be the value of that property, after deducting the mortgage indebtedness. Subsequently, however, and before the decree in this action was entered, the mortgage was foreclosed and the property sold, and thus lost to the parties to this action. The question therefore is, whether, under these circumstances, the Hillmans should have a money judgment run against them. The indebtedness was not theirs—they did not mortgage the property; long before the foreclosure and the consequent loss of the property, the courts had annulled the transaction whereby the Hillmans had received the property from the Gordons. The Hillmans at this time are unable to reconvey the property, not because of any fault of their own, but because of the foreclosure of the mortgage given by the Gordons. If the Hillmans cannot recon-

vey because of no fault of theirs, it would be inequitable to give a judgment against them for failure to reconvey. It is true, had the Hillmans accepted the result of the original decree, the title to this property may have vested in the Gordons before the mortgage foreclosure and the sale thereunder, and thus made it easier for them to protect the property against the foreclosure. But the Hillmans had as much right to appeal from that decree as they had to defend the action in the lower court. They are no more at fault that the property was lost during their appeals than if it had been lost before the making of the original decree—indeed, less so, because the presumption was that that decree was correct, and consequently the presumption was that the Gordons would ultimately have the title to the property returned to them, and thus the greater duty rested on them to protect it against the foreclosure. Under the circumstances, no affirmative duty rested on the Hillmans to protect this property against loss by foreclosure of the mortgage. We have above said that the loss of the property which the Hillmans had transferred to the Gordons ought not to be visited upon the latter. The rights and duties in these regards are reciprocal. If there was no duty on the Gordons to protect against loss the property which the Hillmans had deeded them, then it ought to follow that there was no duty resting on the Hillmans to protect against loss the property which they had received from the Gordons. It follows from what we have said that the judgment given by the decree in this case in favor of the Gordons and against the Hillmans in the sum of $45,946.34 ought not to stand.

It appears that the furniture in the Strathmore Apartments is now, and for a long time past has been, in the possession of the Gordons, and other portions

of the decree award that property to the Gordons and so disposes of it.

It also appears from the original decree that the Hillmans expended $4,369.01 on account of taxes and betterments of the Strathmore property, and that the Gorham note, received by the Gordons from the Hillmans, which they were unable to tender, was of the value of $1,000, and that in that decree the Gordons were required to pay these sums to the Hillmans. We see no such change in the situation as would at this time relieve the Gordons from still making such payments.

(10)    Inasmuch as the Calvin Philips & Co.'s mortgage is on the Strathmore property, and we affirm the judgment as to it, it will follow, as a matter of course, that that mortgage is a valid encumbrance.

The judgment, in so far as it affects the Strathmore Apartments and the furniture therein, is affirmed, with the understanding that the Gordons shall pay the above mentioned $4,369.01 and $1,000, together with interest on those sums as provided in the decree, to the Hillmans contemporaneously with the revesting of the title to the Strathmore property in them, and at the same time the Hillmans shall be entitled to receive the various instruments of conveyance which the Gordons have tendered and deposited in court. That portion of the decree awarding the money judgment against the Hillmans is reversed. That portion of the decree affecting the Calvin Philips & Co.'s mortgage is affirmed. The cause is remanded, with directions to recast the judgment or decree in this case in accordance with the views here expressed.

MAIN, C. J., MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.